State ex rel. Hessey v. Daniels, 143 Wis. 649.

For the appellant the cause was submitted on the briefs of *Regner & Ringle.*

For the respondent there was a brief by *Hand & Hand,* and ·oral argument by *E. B. Hand.*

STATE EX REL. HESSEY, Respondent, vs. DANIELS, Town Clerk, Appellant.

*October 29—November 15, 1910.*

*Constitutional law: Taxation: Local self-government: Assessment not complying with law: Reassessment and review by appointees of state tax commission.*

1. An act of the legislature will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond reasonable doubt.
2. The legislature has plenary power over the whole subject of taxation, within constitutional limitations.
3. The persons appointed under ch. 259, Laws of 1905, by the state tax commissioners to reassess the property of a particular assessment district, or to review the assessment so made, are not officers in the constitutional sense.
4. Local taxing officers, in performing their respective duties, perform governmental as well as municipal functions; and the state has a vital interest in insisting that its laws pertaining to taxation be honestly and fairly administered, to the end that the burden of taxation may be equitably distributed.   Hence the state, in endeavoring to enforce the requirements of the law on that subject, is not acting as a mere interloper, but is performing a duty in which its citizens generally are interested.

5. Whenever local assessors and boards of review act in disregard of their statutory duties the state has power to provide for the appointment of outside agencies to execute the law which is being ignorantly or wantonly violated, or wilfully set at defiance, as the case may be.

6. Since all that the state undertakes to do under ch. 259, Laws of 1905, is to review the work done by the local officers when its proper agencies are satisfied that the law has been violated, that act cannot be declared a violation of sec. 9, art. XIII, Const., on the ground either that it deprives the electors of the local community of the right to choose their taxing officers or that it unlawfully deprives the local officers of the right to exercise their proper functions.

MARSHALL, J., dissents.

APPEAL from an order of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

By ch. 259, Laws of 1905, it is provided that whenever it is made to appear to the state tax commissioners that the assessment of property in any assessment district was not made in substantial compliance with the law, and that the interests of the public would be promoted by a reassessment, such commissioners should have authority to order a reassessment and to name one or more persons who should make the same. · It further provided that the commissioners should have authority to appoint a board of review to review the assessment made by its appointees for that purpose. Pursuant to the provisions of this law a majority of the state tax commissioners appointed three persons to review the assessment and equalization made by the assessor and board of review of the town of Iron River in Bayfield county for the year 1909. The town clerk of that town, acting under the advice and direction of the town board, refused to make out a tax roll on the basis of the assessment and equalization made by the appointees of the tax commissioners. An alternative writ of *mandamus* was sued out requiring said town clerk to make out a tax roll for said town and said year on the basis of the reassessment made as aforesaid, or to show cause why he

should not do so.  By his return to the writ the town clerk
justified his refusal to make out a tax roll in accordance with.
the reassessment, on the ground that the aforesaid ch. 259,.
Laws of 1905, was unconstitutional and void, and because the
only lawful assessment made in said town in said year was
that made by the assessor and board of review duly elected by
the electors of the town for that purpose.  To this return the
relator demurred, which demurrer was sustained, and this.
appeal is taken from the order sustaining the same.

For the appellant there was a brief by *C. F. Morris* and'
*Olin & Butler,* and oral argument by *J. M. Olin.*  To the·
point that ch. 259, Laws of 1905, was unconstitutional, they·
cited, among other authorities, *Lorillard v. Monroe,* 11 N. Y..
392, 394; *People ex rel. Wood v. Draper,* 15 N. Y. 532; *Peo-·
ple v. Raymond,* 37 N. Y. 428; *People ex rel. Bolton v. Al-·
bertson,* 55 N. Y. 50; *Warner v. People ex rel. Conner,* 2·
Denio, 272, 277; *People ex rel. Williamson v. McKinney,* 52·
N. Y. 374; *People ex rel. Fowler v. Bull,* 46 N. Y. 57; *Peo-
ple ex rel. Le Roy v. Foley,* 148 N. Y. 677, 682; *Rathbone v.
Wirth,* 150 N. Y. 459; *Matter of Brenner,* 170 N. Y. 185;.
*People ex rel. Metropolitan St. R. Co. v. Tax Comm'rs,* 174
N. Y. 417; *O'Connor v. Fond du Lac,* 109 Wis. 253, 264–
68; *Davidson v. Hine,* 151 Mich. 294, 15 L. R. A. N. s. 575,
and note; *People ex rel. Le Roy v. Hurlbut,* 24 Mich. 44, 66–
68, 87, 90, 95–110; *People ex rel. Hubbard v. Springwells,.
25 Mich. 152, 156; *Davies v. Saginaw,* 89 Mich. 295, 50 N.
W. 862; *Ex parte Corliss,* 16 N. Dak. 470, 114 N. W. 962;
*State ex rel. Crawford v. Hastings,* 10 Wis. 525; *State ex rel.
Kennedy v. Brunst,* 26 Wis. 412, 7 Am. Rep. 84; *Cole v..
Black River Falls,* 57 Wis. 110; *State ex rel. Hamilton v.
Krez,* 88 Wis. 135; *State ex rel. Williams v. Samuelson,* 131
Wis. 499; *State ex rel. Harley v. Lindemann,* 132 Wis. 47;.
*State ex rel. Gubbins v. Anson,* 132 Wis. 461.

For the respondent there was a brief by *John Walsh,* at-
orney, and a separate brief by *Luse, Powell & Luse,* of coun-·

sel, and the cause was argued orally by *Mr. Walsh* and *Mr. L. K. Luse.* Among other authorities they cited *State ex rel. Brown Co. v. Myers,* 52 Wis. 628; *State ex rel. Ellis v. Thorne,* 112 Wis. 81; *In re Appointment of Revisor,* 141 Wis. 592; *Zimmer v. Bay Co.* 159 Mich. 213, 123 N. W. 899, 903; *State Tax Comm'rs v. Board of Assessors,* 124 Mich. 491, 83 N. W. 209; Cooley, Taxation, 43; *Strange v. Oconto L. Co.* 136 Wis. 516; *Sprague v. Brown,* 40 Wis. 612; *State ex rel. Williams v. Samuelson,* 131 Wis. 499; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553; *State ex rel. Gubbins v. Anson,* 132 Wis. 461; *Foster v. Rowe,* 128 Wis. 326; *Wallace v. Menasha,* 48 Wis. 79; *Crandon v. Forest Co.* 91 Wis. 239, 244; *Hollman v. Platteville,* 101 Wis. 94, 98; *Lorillard v. Monroe,* 11 N. Y. 392, 396; *Jensen v. Polk Co.* 47 Wis. 298; *People ex rel. Wood v. Draper,* 15 N. Y. 532; *People v. Pinckney,* 32 N. Y. 377, 393, 394.

BARNES, J.     Sec. 9 of art. XIII of our state constitution provides that "All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose."

Acting under the provisions of ch. 259, Laws of 1905, the substance of which will be found in the foregoing statement of facts, the state tax commissioners found that the assessment of the town of Iron River for the year 1909 was not made in substantial compliance with the law, and appointed certain nonresidents of the town to make a new assessment of the property therein, and appointed certain other nonresidents to act as a board of equalization to review such assessment.

The office of town assessor being one which existed at the time the constitution was adopted, it is urged that the law in question violates the provision of the constitution above

State ex rel. Hessey v. Daniels, 143 Wis. 649.

quoted, in that it deprives the electors of the town of the right. to choose their assessor and board of review and to have them perform their legitimate functions, and this is the sole question raised in this court.

It is elementary law that an act of the legislature will not be declared unconstitutional unless its repugnance to the con-. stitution is clear and beyond reasonable doubt. There is a line of cases so holding, running from *Norton v. Rooker,* 1 Pin. 195, to *McGillivray v. Joint School Dist.* 112 Wis. 354, 359, 88 N. W. 310, and no doubt beyond; and this general doctrine has never been qualified in words. Equally well settled and as oft reiterated is the other rule that "the legislature has plenary power over the whole subject of taxation within constitutional limitations." *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797.

It is conceded that the law we are considering neither deprives nor purports to deprive local communities of the right. to elect their assessors and the other officers who constitute the boards of review. It is likewise conceded that the persons. appointed by the tax commissioners to make the assessment provided for, as well as persons selected to review it, are not officers. *Hall v. State,* 39 Wis. 79; *Weise v. Milwaukee Co.* 51 Wis. 564, 8 N. W. 295; *State ex rel. Brown Co. v. Myers,.* 52 Wis. 628, 632, 9 N. W. 777; *In re Appointment of Revisor,* 141 Wis. 592, 124 N. W. 670. The appointees are selected merely to perform a specific act, and when it is performed their powers and functions cease. So the real question is, Does the act unlawfully deprive the local officers of the right to exercise their functions and the electors of the municipality of the right to choose their agents to do the particular work?

It must be remembered that, so long as the local officers obey the laws of the state, they are not meddled with and their functions are in no way curtailed, and it is only when they violate the law which they are bound to obey that the state.

undertakes to interfere.   It should also be remembered that assessors in making an assessment, and boards of review in reviewing it, and local treasurers in collecting the taxes levied, perform governmental as well as municipal functions.   *Wallace v. Menasha,* 48 Wis. 79, 4 N. W. 101; *Crandon v. Forest Co.* 91 Wis. 239, 64 N. W. 847; *Hollman v. Platteville,* 101 Wis. 94, 76 N. W. 1119.   Furthermore, the state has a vital interest in insisting that its laws pertaining to taxation be honestly and fairly administered, to the end that the burden of taxation may be equitably distributed.   Taxes are of three general kinds: state, county, and local.   While the state and the county may fix a valuation of the taxable property in the smaller political units within their boundaries, different from that found by the local authorities, still, in practice, the local assessment may be a strong determining factor in fixing such a valuation.   The matter of discovering personal property, and more particularly that of an intangible nature, must devolve very largely upon the work of the local assessor and board of review.   In order to make an equal distribution of county and state taxes it is essential that all taxable property that can be discovered be placed upon the tax rolls and that a uniform basis for valuation be adopted and adhered to.   So long as the practice prevails of assessing property in different localities at figures varying from twenty-five to one hundred per cent. or more of its true value, and of doing the same thing locally for that matter, so long are we liable to have gross inequalities in the distribution of the tax burden.   So the state in endeavoring to enforce the requirements of the law in regard to the assessment and equalization of property is not acting as a mere interloper, exercising a paternalistic function for the purpose of exploiting its right so to do, but is attempting in good faith to perform a duty in which its citizens generally have something more than a passing interest.   All the state has undertaken to do is to review the work done by local officers when its proper agencies are satisfied

that the law has been violated. In such a contingency the law in substance and effect provides for a reassessment of the property of the local municipality.

We fail to see where there is any difference in principle between the law in question and sec. 1077a of our statutes, which was in force for many years. That statute provided that a reapportionment of the valuation of the taxable property of the several towns, cities, and villages of any county, as fixed by the county board, might be reviewed by nonresident commissioners appointed by a circuit judge, and a readjustment made in accordance with the facts found. The validity of that law was attacked in this court on three separate occasions and its constitutionality was sustained each time. The first assault was made on the ground that the law violated the provision of the constitution which it is here claimed has been overridden. The cases are *State ex rel. Brown Co. v. Myers,* 52 Wis. 628, 9 N. W. 777; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797; and *Foster v. Rowe,* 128 Wis. 326, 107 N. W. 635. While we do not wish to be presently understood as giving express sanction to all the reasons stated by the court in support of these decisions, we entertain no doubt that in principle the cases are correctly decided, and we have no hesitancy in holding that, whenever local assessors and boards of review act in disregard of the statutory duties enjoined upon them, the state has the power to provide for the appointment of outside agencies to execute the law which is being ignorantly or wantonly violated, or wilfully set at defiance, as the case may be. It is true that sec. 1077a required the commissioners appointed under it to so adjust the valuations made by them that their aggregate should total the aggregate valuation of the entire property of the county as fixed by the county board, but this provision could have no bearing on the constitutionality of the law. It would be just as valid without it as with it.

There is no substantial difference in principle between

ch. 259, Laws of 1905, and sec. 1, ch. 175, Laws of 1850, which has been on our statute books ever since its enactment and now appears as sec. 1152, Stats. (1898). The earlier statute provides that, whenever the electors of a town shall fail to elect taxing officers, the county board may appoint those of an adjoining town to exercise their respective functions in the delinquent town. The constitutionality of this law was sustained in *Strange v. Oconto L. Co.* 136 Wis. 516, 117 N. W. 1023. By ch. 259, Laws of 1905, the legislature has enacted that, when the officers elected fail to perform their functions and duties in accordance with positive law, nonresidents of the town may be appointed to assess and equalize property in a legal manner. One statute provides for a contingency where the electors fail to perform their functions, and the other supplements it by providing for a contingency arising where officers are elected but fail to perform their duties in a lawful way. It is quite apparent that the law under consideration may be well calculated to check grave abuses, and we conclude that it does not trench upon any right guaranteed by the constitution. This conclusion renders it unnecessary to consider other interesting and important questions that were ably presented in the written briefs and in the oral arguments at the bar.

*By the Court.*—Order affirmed.

The following opinion was filed November 28, 1910:

MARSHALL, J. (*dissenting*). True, a legislative enactment is never to be declared not law if it can be sustained; or as the rule is commonly phrased, a statute should not be held to be unconstitutional unless it clearly appears to be so beyond every reasonable doubt. No principle of law is more essentially elementary than that. In no period of our judicial history has greater dignity been given to it by frequent and emphatic judicial declarations than in recent years. *Bon-*

*nett v. Vallier,* 136 Wis. 193, 116 N. W. 885; *State ex rel. McGrael v. Phelps,* 144 Wis. ——, 128 N. W. 1041, are good examples.

However, to properly apply the aforesaid rule one must appreciate the significance of the limitation characterized by the word "reasonable." As in case of the degree of certainty of the existence of a fact in a criminal prosecution requisite to warrant a finding in the affirmative, it must be remembered that there is a wide difference between a mere or possible doubt and a reasonable doubt. If we trespass upon the former field the most important function of the court as an instrumentality for the preservation of constitutional liberty will utterly fail of its purpose. Our paramount duty is to support the constitution. Our secondary duty is to give efficiency by judicial administration to acts of the lawmaking power which are law in fact, not merely in form, because not inimical to any constitutional limitation.

So, in dealing with any matter to which the constitution necessarily applies, if a statute, in form at least, and presumably in fact as well, also applies, and there is a clear conflict, the court must decide between them, and as "the constitution is superior to any ordinary act of the legislature, the constitution, and not the ordinary act, must govern the case to which they both apply." Such is the teaching of the early classic in this country, *Marbury v. Madison,* 1 Cranch, 137, which has been sanctified by more than a century of universal adoption and by no jurisdiction more consistently than our own; though it must be confessed that there has not been perfect freedom from lapses here and there, as what we shall say, it is thought, pretty clearly indicates. That there has been such a lapse in this case, I will endeavor to show, the court, of course, not now intending to violate the salutary principle involved. Such lapses are liable to accompany the spirit of the times, as the history of the past will show. Different conditions furnish different viewpoints, and different human

instrumentalities with differently focused mentalities on the particular point see things differently. So that which is involved in mere doubt, or no doubt at all at one time, may by a mere shifting of scenes and instrumentalities, especially in the light of unguarded expressions made in support of some novel and doubtful construction, appear otherwise. Constant progression in that line stimulated by the growing impatience of originators of new schemes, with fundamental restraints, may, in time, greatly or wholly impair the efficiency of any written constitution, as the incessant action of tiny drops of water may wear away the hardest stone.

The situation which leads to my dissent is the natural outgrowth, in my judgment, of such unguarded expressions as occurred in *State ex rel. Brown Co. v. Myers,* 52 Wis. 628, 9 N. W. 777, in supposed necessary support of rather extreme legislation. They were really unnecessary to the decision. Guaranteed local self-government, as the court thought, was not interfered with. The court said:

"An examination of the law in question will show, we think, that it does not . . . interfere with the right of local self-government."

Such being the case, the broad, I think unnecessary, inconsiderate, statement, hereafter quoted,—a statement which I feel sure the court as at present constituted would hesitate, if not refuse, to follow in the ultimate,—was the clearest *obiter.*

The law under consideration in the cited case was the one authorizing county assessment of property for county taxation and distribution of the county apportionment of state taxes, to be corrected as to inequalities. Sec. 1077a, Stats. (1898). The law did not contemplate superseding the county assessment by one made by commissioners appointed by the circuit judge, neither by setting aside the regular assessment nor making a new one. The sole function was to act as a sort of appellate body to correct inequalities in the distribution of

the aggregate valuation of all the taxable property of the county between the several subdivisions, adding to some and making equivalent deductions from others, and only to afford that remedy on application of the people of some subdivision deeming themselves aggrieved.

Thus the people as a whole in the exercise of local self-government were left to take the initiative. The function of the commissioners was that of correcting inequalities,—one not theretofore exercised by any tribunal in the particular field. Neither prior to the constitution nor any time subsequently was there an officer or body to deal with that matter. So there was really no room for any very confident claim that the legislation interfered with local self-government guaranteed by the constitution, and the court so held without referring to the subject more than briefly and rather incidentally.

It should be noted that the whole groundwork of the decision in *State ex rel. Brown Co. v. Myers, supra,* was that the function of the board was to correct mistakes or error in the distribution of the assessed valuation of the whole "so as to produce a just relation between all the valuations." Emphasis was significantly given to the fact that it did not authorize "in any instance increase" of "the entire aggregate valuation of the taxable property of the county as fixed by the board." "We can see no constitutional objection," said the court, "to a law which authorizes the appointment of commissioners merely to adjust valuations of real estate between different towns as determined by the county board." This and other indications show that the court did not regard the law as having to do with any official function within the constitutional guaranty of local self-government, because it did not have to do with an original assessment of property at all. So the subject of local self-government received but mere passing attention. So incidental was it that the court went no further than to concede that the claim made that local self-government was secured to the people by the fundamental

law, "*especially in matters of taxation, was in a certain sense sound,*" saying, "there are doubtless limits to the legislative power" in such matters, plainly showing that the definite and certain constitutional reservation of local self-government, as regards all official functions existing before the constitution, as it has been in recent years recognized, was not appreciated. The case, however, as a whole, is convincing, that had the law provided for an actual assessment of property for taxation, entirely superseding the assessment by local officers appointed by local authority, it would not have been sustained.

The foregoing indicates, most clearly, how unguarded and unnecessary was this expression in the case:

"This whole matter is within the control of the legislature, which, doubtless, might abolish the present system and create a state board for the assessment and equalization of the value of taxable property of the state."

That is directly contrary to the concession that local self-government, "especially in matters of taxation, was in a certain sense" secured to the people by the constitution. We are safe in saying that its broad meaning would not be applied by the court today. It could only be justified, if at all, as regards state taxation.

The condition created by the case already discussed was somewhat further complicated, it seems, by the decision in *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797, opinion by the writer, speaking for the court. It was there appreciated, as I remember it, that there were expressions in the earlier case which, broadly taken, could not be sustained. I think now such expression should have been distinctly disapproved. The main ground upon which the law was challenged as unconstitutional, was that it was a delegation of judicial power to a body other than a court. A decision on that in the negative was held to be within the spirit of the previous decision. So there, as before, the question of local self-government was not supposed to be involved. It was thought

by the court, I think,—I know it was by the writer,—that there was but one of two things to do with the unguarded previous declaration of legislative absolutism, either to withdraw it, or repeat it with a restriction which the court previously omitted, probably without any considerate purpose to hold that, in the field of taxation, there are no limits to guard against outside interference with local rights. The latter was adopted, the court fencing about the previous expression by these words of unmistakable import:

"The decision is to the effect that the legislature has plenary power over the whole subject of taxation *within constitutional limitations;*" adding "that it may select the objects of taxation, determine the amount of taxes that shall be levied and the particular purpose or purposes the same shall be devoted to, the manner in which property shall be valued for taxation; that it may establish the necessary taxing districts and provide for the selection of all public agencies for the collection, return, and expenditure of the public revenues."

Respecting this the court remarked, "no reason is perceived why the principle thus broadly stated should be restricted in any degree." That is, as plainly indicated, viewing the language as describing power exercisable "within constitutional limitations."

The unguarded expression in the first case, restricted as it was in the second, would probably not have been efficient to leave a reasonable doubt as to the illegitimacy of the act in question were it not for the fact that the court, on ground not dependable upon such expressions, held that the mere equalization of assessments made by local authority was not a usurpation of a function belonging to such authority. That, it seems, is, in the main, the thing which the court now thinks is so analogous to the subject matter of the legislation in question, that a distinction, on principle, which would make one legitimate and the other not, is not plain beyond a reasonable doubt.

As we have before indicated, the subject of county equal-

ization was not a matter dealt with as a local function independently of the county assessment before the constitution was adopted. Had the act provided for the assessment of the property of the county for taxation instead of mere equalization thereof, not changing the aggregate at all, a far different question would have been presented. I apprehend that this court would now find no serious difficulty, were it not for those decisions, in holding a law providing for the original assessment of property for local taxation by officers appointed by outside authority, to be clearly unconstitutional. Consistency with the logic of the other decisions of this court would make that inevitable.

In *O'Connor v. Fond du Lac,* 109 Wis. 253, 85 N. W. 327, the court met, fully, for the first time, the question of whether the functions of local officers as they existed at the time the constitution was adopted, can be conferred upon similar officers similarly characterized, or by other officers, appointed or elected by foreign authority, and the negative prevailed under sec. 9, art. XIII, of the constitution, providing that:

"All city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose;" and further providing, similarly, as to officers of other subdivisions of the state.

The court, unqualifiedly and most emphatically, adopted the doctrine of the highest court of New York respecting a similar constitutional provision, that the purpose thereof was to preserve local authority to select all officers clothed with the functions of local administration as the same existed at the time of the formation of the constitution; that the thing conserved was more particularly the official function, than the office by any particular name; that the function could not be taken from local authority of selection by conferring it on some newly created officer or board. The New York authori-

ties are very pronounced on this and in the very field we are discussing, and its doctrine is ours both because we took the constitutional provision with a substantially existing construction, later approved by the ultimate court, and because it is right on principle, independently thereof, as this court has iterated and reiterated.

The principle of the *O'Connor Case* was, doubtless, not wholly out of mind when we came to *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797. It in effect overruled the literal sense of the expression in *State ex rel. Brown Co. v. Myers,* 52 Wis. 628, 9 N. W. 777, which we have discussed and rendered it necessary for the purpose of harmony, when the later case was written, that the previously unguarded remarks should be brought within constitutional limitations. Looking backward, it seems that the earlier case should have received much more radical treatment.

Since the *O'Connor Case* was decided the legal question involved has been most thoroughly reconsidered and the previous conclusion affirmed. *State ex rel. Dithmar v. Bunnell,* 131 Wis. 198, 215, 110 N. W. 177; *State ex rel. Harley v. Lindemann,* 132 Wis. 47, 111 N. W. 214; *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 112 N. W. 475.

In the last case cited the court declared that the New York doctrine, adopted by its court of last resort after the adoption of our constitution, was almost at once after such adoption accepted and approved here and has been steadily adhered to.

The general idea of the doctrine aforesaid, is such that local official functions performed by officers of local selection before the constitution was adopted, cannot be lawfully taken from them and imposed on officers appointed by non-local authority; that the spirit of the constitution is that, as to official functions commonly exercised at the time of the adoption of the constitution, they must, if exercised at all, be so, as to town matters by officers selected by town authority, as to counties by officers selected by county authority, and as to

state matters by officers selected by state authority. No exception is made in such authorities, or in New York, or anywhere else, under any similar constitutional provision, as to officers having to do with the assessment and collection of taxes.

The case of *Foster v. Rowe,* 128 Wis. 326, 107 N. W. 635, adds nothing to the two cases we have discussed on the subject first treated in *State ex rel. Brown Co. v. Myers, supra.* Nothing there said militates against the *O'Connor Case* and *State ex rel. Brown Co. v. Myers, supra,* as modified in spirit thereby.

The idea that the emergency rule, so called, invoked in *Strange v. Oconto L. Co.* 136 Wis. 516, 117 N. W. 1023, to sustain the law of 1850, now sec. 1152, Stats. (1898), applies to the case in hand, is carrying such rule to such an unreasonable extent as to render it invocable to overturn local self-government entirely. With due respect for the judgment of my brethren, I cannot see any analogy at all between that statute and the one in question. The former fits a situation where the locality has voluntarily surrendered its constitutional right of self-government by negligently or contumaciously omitting to elect the instrumentalities to that end. Then the law provides that similar officers from an adjoining locality shall temporarily perform the duties. Here the people of the town did nothing to forfeit their constitutional right. They selected an assessor and elected the officers constituting the board of review. All the machinery for local self-government was provided and all the judicial remedies were invocable to coerce them into doing their duties and remedying their failures, yet this law steps in authorizing state authority, in quite a summary way, to appoint a person, or persons, and by their aid to make an assessment of all the taxable property of the taxing district, regardless of the regular officer or his work. Such person, or persons, are not required to be citizens of the taxing district, or even, expressly,

of the state. The law ignores the whole machinery of the taxing district. It provides that the same foreign authority shall appoint a board of review to pass upon the work of the special assessor or assessors. The members of this board are not required to be citizens of the taxing district or even, expressly, of the state. Thus the statute contemplates an entire displacement of the local machinery while such machinery is in existence and competent to act. Is not this statement sufficient to show that the law providing for an assessor where the taxing district neglects or refuses to elect one, has no similarity to the one in question whatever? So, as we have seen, the two statutes and decisions thereunder, which form the basis of the court's decision, in that they at least create reasonable doubt as to the illegitimacy of the statute in question, have no similarity thereto. The first does not deal with an assessment from an original standpoint at all, but only with mere inequalities of distribution, and was supported on that express ground. The second deals with a situation where the people have voluntarily surrendered the constitutional right to local self-government. The law here provides for a complete supersession of the local instrumentalities without the consent of the taxing district in its corporate capacity, or the people thereof otherwise, and without any fault of the people or perhaps even of its officers, except in respect to error of judgment.

It must be remembered that the law provides for the state authority taking possession of the local administration in its discretion when it shall be made to appear that such administration has not produced an assessment in substantial compliance with law. No wilful neglect or fraud of the assessor is required. It is not even required that the regular board of review shall first have failed to perform its duty in the premises, which might remedy the whole matter. The compensation of the foreign assessor and members of the board of review, even, is required to be fixed by foreign authority and

at a level much above ordinary compensation for such services when rendered by the regular local officers, and there are provisions permitting other large expenses to be incurred, all to be, in the end, a burden upon the local taxpayers. Even the auditing of such matters is taken from control of the local auditing board and made a matter of state concern, wholly at the expense of the locality. The people of the locality are wholly ignored. Their part is to submit to the burden of taxation and pay the bills as a part of their state tax. Can any one imagine a more complete usurpation of local authority? Does not the law break down completely the constitutional safeguards of local self-government?

Enough has been said to demonstrate, in my judgment, that it is highly illogical to reason from the decisions upholding the two statutes heretofore sustained, that the one in question is valid.