(November 29, 1913.)

J. A. BLOMQUIST et al., as the Idaho Tax Commission, Plaintiffs, v. THE BOARD OF COUNTY COMMISSIONERS OF BANNOCK COUNTY, Acting as a Board of Equalization, Defendants.

[137 Pac. 174.]

Taxation — Equalization — State Tax Commission — Legislature— Powers of—Constitutional Law—Assessor—Board of Equalization—Function of.

1.   *Held,* that the legislature, in creating the Idaho tax commission (Sess. Laws 1913, p. 167), did not intend to deprive any of the constitutional officers or boards of duties imposed upon them by the express or implied provisions of the constitution, and that it was not intended that said tax commission should usurp or perform the duties of the assessors or county boards of equalization.

2.   *Held,* that said act is not in conflict with the provisions of the constitution.

3.   *Held,* that said tax commission has not the power or authority to compel a county board of equalization to adopt its views or judgment in equalizing the value of certain property for taxation.

4.   The words "assessor" and county "board of equalization," as used in the state constitution, carry with them the powers usually conferred on officers or boards of like names.

5.   Under the provisions of sec. 6, art. 18, of the constitution, it is essential that the assessment of property located wholly within

a county shall be made by the assessor elected by the voters of the county, and after such assessment is made, the county board of equalization may equalize such assessments.

6.  Under the provisions of the state constitution, the legislature cannot assess property, nor can any appointive board do so.

7.  Since the constitution provided a method or system for the assessment of property with the object and purpose of arriving at a uniformity of valuation, and has designated certain officers to perform the duties relative thereto, it is beyond the power of the legislature to take from such officers such duties.

8.  When the county board of equalization exercises its legal discretion in regard to equalizing the valuation of property for assessment and does so in good faith and without fraud, the tax commission has no authority to set aside such action and substitute its own judgment therefor.

9.  Since the constitution provides a scheme or framework for the administration of the revenue laws of the state, the legislature cannot substitute another and different scheme or method therefor.

10.  Sec. 6, art. 18, of the state constitution provides for the biennial election of county commissioners, and section 12 of art. 7 provides that the boards of county commissioners of the several counties of the state shall constitute boards of equalization in their respective counties, whose duty it shall be to equalize the valuation of taxable property in their respective counties.

11.  A state board of equalization is provided for by sec. 12, art. 7, of the state constitution, consisting of five state officers. That board has power to equalize the assessment of property between different counties of the state, and also to assess the property of railroads, telegraph, telephone and transmission lines of the state.

12.  In *mandamus* proceedings, if the action required is judicial and discretionary in its nature, the court could only compel the officer to act, but could not compel him to decide in any particular manner.

13.  The legislature has no power or authority to set aside the revenue system of the state for assessing, equalizing and taxing property established by the constitution.

14.  Where the *situs* of property for taxation is not wholly within any one county, such as railroads, telegraph lines, etc., such property may be assessed as a whole by the officers having jurisdiction thereof, such as the state board of equalization in this state.

15.  The legislature has not provided an appeal from the decision of boards of equalization.

16.  The Idaho tax commission is not given the power under the provisions of said act to compel the county board of equalization,

where such board has acted within its legal discretion, and fairly and honestly, to change such action and make it conform to the judgment of the commission in such matter.

Original proceedings in this court for a writ of mandate to compel the county board of equalization of Bannock county to change its equalization of the valuation of certain property in said county to conform to the views of the tax commission in regard thereto. Alternative writ quashed and peremptory writ denied.

D. Worth Clark and Jas. E. Babb, for Plaintiffs.

It is a general rule that, in summary proceedings in *mandamus*, courts refuse to determine constitutionality of statutes affecting the rights of third parties; and grave questions of this character may not be raised by ministerial officers whose duty it is to carry out statutory directions. (High on Extr. Remedies, par. 143; *People v. Salomon*, 54 Ill. 39; *State v. Hapgood*, 30 S. C. 519, 9 S. E. 686, 3 L. R. A. 841; *People v. Collins*, 7 Johns. (N. Y.) 549; *School Dist. of Tremont v. Clark*, 33 Me. 482; *Smythe v. Titcomb*, 31 Me. 272.)

"Public policy and public necessity require prompt and efficient action from such officers, and when intrusted with the assessment of taxes and the collection and disbursement of revenue, they have no right to refuse to perform ministerial duties prescribed by law because of any apprehension on their part that others may be injuriously affected, or that the statute prescribing such duties may be unconstitutional." (*People v. Ames*, 24 Colo. 422, 51 Pac. 426; *Airy v. People*, 21 Colo. 144, 40 Pac. 362; *Newman v. People*, 23 Colo. 300, 47 Pac. 278.)

Statutes of this character, conferring upon officers and boards a general supervision, have a general and accepted meaning which carries with it the power of correction as well as overseeing and overlooking, and there is no thought of impotency contained in the terms of the statute. (*Great Northern Ry. Co. v. Snohomish County*, 48 Wash. 478, 93 Pac. 924.)

There is nothing even hinted at in the constitution to carry the idea that the county assessor is to be the only officer who can assess property for taxation in the state, and ever since 1901 the state board of equalization has had the exclusive power to assess and value for purposes of taxation all telegraph and telephone and railroad tracks and rolling stock and franchises of public service companies and corporations owning such property situated wholly or partly within this state.   This statute has been in force since its enactment (Laws 1901, p. 233), and has been upheld by this court. (*McConnell v. State Board,* 11 Ida. 652, 83 Pac. 494.)   The decisions of our supreme court upon this subject are in consonance with decisions of courts of other states where this question has arisen, and particularly in Colorado and Missouri, where the constitutional provisions establishing state boards of equalization are similar to the provisions of our constitution.   (*Ames v. People,* 26 Colo. 83, 56 Pac. 656.)

The attention of the court is also called to the case of *State v. Daniels,* 143 Wis. 649, 128 N. W. 565, wherein the supreme court of Wisconsin construed a constitutional provision similar to the provision of the constitution of California passed upon in *Houghton v. Austin,* 47 Cal. 646.   (See, also, *Board of Tax Commrs. v. Board of Assessors,* 124 Mich. 491, 83 N. W. 209.)

J. H. Peterson, Attorney General, J. J. Guheen and T. C. Coffin, Assistants, and McDougall & Jones, for Defendants.

The constitution provides a framework upon which to build our revenue laws, consisting of assessment of property by local elective officers, equalization of assessments by local elective equalizing boards and equalization between localities by a state elective board.   (Const., art. 7, secs. 5, 12; art. 18, secs. 6, 10.)

The word "assessor" as used in the constitution carries with it the powers usually conferred upon officers of like names.   (*Gibbons v. Ogden,* 9 Wheat. 1, 6 L. ed. 23; *Mutual Life Ins. Co. v. Martien,* 27 Mont. 437–440, 71 Pac. 740;

*State v. Tonella,* 70 Miss. 701, 14 So. 17, 22 L. R. A. 346; *French v. State,* 52 Miss. 759; *People v. Raymond,* 37 N. Y. 431.)

Under sec. 6, art. 18, Idaho constitution, it is essential that the assessment of property be made by assessors *elected* by the voters of the *county.* (Welty on Assessment, sec. 10; *People v. Hastings,* 29 Cal. 449; *People v. San Francisco Savings Union,* 31 Cal. 132; *People v. McCreery,* 34 Cal. 433; *People v. Sargent,* 44 Cal. 430; *Houghton v. Austin,* 47 Cal. 646; *State v. Tonella, supra;* Cooley on Taxation, 3d ed., sec. 778.)

Where the constitution provides a method or system for the assessment of property with the object of arriving at a uniformity of valuation and designates certain officers to perform certain duties, involving the exercise of their individual judgments, it is beyond the power of the legislature to pass any law affecting the performance of those duties or controlling the exercise of that judgment. (*Houghton v. Austin, supra; Wells, Fargo & Co. v. State Board of Equalization,* 56 Cal. 194; *State v. Tonella, supra; Ames v. People,* 26 Colo. 83, 56 Pac. 656; *In re Taxation of Mining Claims,* 9 Colo. 635, 21 Pac. 476; *People ex rel. Crawford v. Lothrop,* 3 Colo. 428; *Davies v. Board of Supervisors,* 89 Mich. 295, 50 N. W. 862; Cooley on Taxation, 3d ed., 427–429.)

When the constitution devolves a duty upon a particular person, the legislature may not substitute another. (Welty on Taxation, sec. 10; *Houghton v. Austin, supra; State v. Tonella, supra.*)

The legislature is not empowered to provide for the review of the action of county boards of equalization. (*Feltham v. Board,* 10 Ida. 182, 77 Pac. 332; *Raaf v. Board,* 11 Ida. 707, 84 Pac. 33; *State v. Daniels,* 143 Mich. 649, 128 N. W. 565 (criticised and shown to be contradictory to other decisions in Wisconsin); *State ex rel. Brown County v. Myers,* 52 Wis. 628, 9 N. W. 777; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797, 55 L. R. A. 956; *Missouri River Power Co. v. Steele,* 32 Mont. 433, 80 Pac. 1093 (discussed and compared with earlier Montana cases); *State v. State*

*Board of Equalization,* 18 Mont. 473, 46 Pac. 266; *Mutual Life Ins. Co. v. Martien,* 27 Mont. 437, 71 Pac. 470.)

The following cases distinguished: *Spaulding v. Hill,* 86 Ky. 656, 7 S. W. 27; *Board of State Tax Commrs. v. Board of Assessors,* 124 Mich. 491, 83 N. W. 209; *Sawyer v. Dooley,* 21 Nev. 390, 32 Pac. 437; *Nevada Tax Commission v. Campbell* (Nev.), 135 Pac. 609; *Board of Equalization Cases.* 49 Ark. 518; *People v. Salomon,* 46 Ill. 333.

The powers conferred upon the Idaho tax commission are not as broad as those conferred upon the Washington tax commission. The following cases construing the Washington tax commission law distinguished: *Great Northern Ry. Co. v. Snohomish County,* 48 Wash. 478, 93 Pac. 924; *Great Northern Ry. Co. v. Snohomish County,* 54 Wash. 23, 102 Pac. 881; *State ex rel. Oregon Ry. & Nav. Co. v. Clauson,* 63 Wash. 535, 116 Pac. 7.

SULLIVAN, J.—This is an application by the tax commission of the state for a writ of mandate to the board of county commissioners of Bannock county, sitting as a board of equalization for Bannock county, to compel said board to equalize the taxes of Franklin & Hays in the amounts fixed by an order made by said Idaho tax commission, and to compel them to comply with said order in all respects.

Upon the application of said tax commission, the alternative writ of mandate was issued and the said board made due return thereto, and the cause came on for hearing before this court upon the petition and affidavit and motion to quash interposed by the defendants.

Briefly, the facts are as follows: N. G. Franklin and R. J. Hays constituted a partnership doing business in Pocatello, Bannock county. The property of the partnership was assessed by the assessor of said county for taxes for the year 1913, as follows: Improvements situated upon Block 39, $15,000; machinery, $5,000. Thereafter application was made to said board of equalization for a reduction in this valuation, with the result that the board refused to reduce the assessment as to the improvements but reduced the

assessment on machinery to $3,000, making the total assessment as equalized $18,000 on said improvements and machinery. Said partnership then filed their complaint with the Idaho tax commission, the plaintiffs herein, after which a hearing was had where all parties interested appeared, and evidence was taken before said commission as to the actual cash value of said property, and upon consideration of such evidence the commission entered an order which was duly served upon the defendants, a part of which order is as follows:

"It is therefore ordered that the order of the said Board of Equalization reducing the valuation of said machinery to the sum of $3,000.00 and their refusal and neglect to reduce the valuation fixed by the Assessor upon the brewery building aforesaid, be and the same is hereby set aside and declared erroneous, and of no effect.

"It is further ordered that the said Board of Equalization consisting of Meyers Cohn, George Gittins, and W. B. Wright, be, and they are hereby directed that immediately upon receiving notice of this order, to enter upon the assessment-roll of the said Bannock County, State of Idaho, or cause to be entered thereon in accordance with the statute in such cases provided, the valuation of the aforesaid improvements upon said lots at the sum of $10,000.00 and the machinery above referred to at the sum of $1000.00 and that when such change in said assessment shall have been made as herein directed, the same shall become the equalized assessment of said property, upon which shall be computed the taxes to be paid by the said owner of said property for the year 1913."

The board of equalization of Bannock county refused to comply with said order so made, and the Idaho tax commission now seeks in this proceeding to compel said board to comply with said order.

The constitutionality of the act of the legislature creating the Idaho tax commission and providing for its organization and defining its powers and duties, etc. (Sess. Laws 1913, p. 167), is raised by this proceeding, and if it be determined

that said act is constitutional, then the question of the duties of said tax commission is also raised.

It is contended by counsel for the tax commission that said act was intended to give plenary powers to said commission, as set forth in sec. 8 of the act, which section is as follows:

"The commission shall supervise the administration of all laws relating to the assessment of property, and the levy, collection, apportionment and distribution of taxes, and shall exercise power and authority to enforce all such laws, and in so doing shall oversee all boards of assessment, boards of equalization and all officers upon whom any duties devolve under the revenue laws of this state, and require all such boards and officers to perform the duties imposed upon them by such laws, and may examine all books, records and accounts of such boards and officers, and require such boards and officers to furnish the commission such records, data and information as may be had from the records in their several offices and as the commission may deem necessary."

It will be observed from the provisions of said section that it does not confine the supervision and administrative powers of the tax commission to any one department or feature in the levy, collection, apportionment or distribution of taxes, but makes its powers in this respect general so as to cover all features of the revenue laws of the state providing for the assessment, levy, collection, apportionment and distribution of taxes.   It is clear that if the provisions of said section must be so construed as to run counter to, or be in conflict with, any of the provisions of our constitution in regard to the assessment, collection, etc., of taxes, then said act must be held to be in violation of the constitution; but if the duties imposed upon said board by said act do not take away from or impinge upon the duties of the constitutional officers who are authorized to assess, equalize, collect and distribute taxes, then said act is not in conflict with the constitution and is valid.

The direct question at issue in this case is: Has the tax commission power to compel a county board of equalization

to adopt its views in equalizing the value of certain property for taxation? The assessor is required to assess the property in his county at its actual cash value according to his honest opinion and best judgment, and if the opinion of the tax commission is different from that of the assessor, the tax commission cannot compel the assessor to change such assessment and make it conform to the opinion of the tax commission. And so with the board of equalization. It has certain discretion in the equalization of the values placed upon property within its county by the assessor, and while the tax commission has full power and authority to consult and advise with the board of equalization in regard to the true cash value of the property sought to be equalized, they have no power or authority under said act to compel the board of equalization to equalize according to the commission's views rather than its own, so long as the officer or board performs the duties imposed by law and acts in good faith and according to his best judgment and discretion.

The words "assessor" and county "board of equalization" as used in the constitution, carry with them the powers usually conferred upon officers or boards of like names. Under sec. 6, art. 18, of the constitution, it is essential that the assessment of property located wholly within a county shall be made by the assessor elected by the voters of the county, and if the assessor has no discretion in placing a value upon the property assessed, he is nothing more than a listing officer, without any power to assess property at its cash or any other value according to his best judgment or legal discretion. It may be said that the duties devolving upon the assessor and county board of equalization can still be performed, but such duties are no more than empty forms if appointive boards and officers desire to act and fix values and do so act. The fact that it is left entirely to the judgment of such appointive boards and officers as to whether or not they will act is not controlling.

Before taxes can be levied upon any property, the property must be assessed; that is, it must be listed and valued for taxation. Under our constitution this duty devolves upon

the officers whose title of office indicate that duty, to wit, the assessors. The legislature cannot assess property nor can any appointive board assess property for taxation under the constitution of the state of Idaho, and the essential duties of an assessor and a county board of equalization must be preserved until a change is made by proper amendments to the state constitution.

It is stated in Cooley on Taxation, 3d ed., p. 778, that a board to review assessments, having power to make changes, is in effect a board of assessors, and if by the law assessors must be elected by the people, the members of such board must be so chosen.

The constitution provides a method or system for the assessment of property with the object of arriving at a uniformity of valuation, and designates certain officers to perform certain duties involving the exercise of their legal discretion or individual judgment, certainly as to the value of property, and it is beyond the power of the legislature to pass any law that would take from the assessor his individual judgment in regard to the value of property or controlling the exercise of his judgment, in the first instance, except that the board of equalization may equalize such assessments. If an officer exercises his legal discretion in good faith and without fraud, then he is performing his duty under the law, otherwise not; and if not, then he fails to perform his duty and is liable for a failure to faithfully perform his duties.

It is stated in Cooley on Taxation, 3d ed., pp. 427–429, that where the constitution provides a scheme or framework for the mechanical administration of the revenue laws of the state, the legislature cannot substitute another method therefor. When the constitution devolves a duty upon a particular person, the legislature may not substitute any other person to perform that duty.

What has been said in regard to the assessor applies equally to the county board of equalization. As bearing upon this question, see *State v. Tonella,* 70 Miss. 701, 14 So. 17, 22 L. R. A. 346; *People v. Raymond,* 37 N. Y. 431. Those decisions are along the line that the assessment and equalization

of property should be made and done by the officer designated and elected by the voters, as provided in the constitution.

Sec. 6 of art. 18 of the state constitution provides for the biennial election of county commissioners, and sec. 10 of the same article provides that the board of county commissioners shall consist of three members, and sec. 12 of art. 7 provides that the board of county commissioners of the several counties of the state shall constitute boards of equalization in their respective counties whose duty it shall be to equalize the valuation of taxable property in their respective counties under such rules and regulations as shall be prescribed by law. All of said officers are elected by the people.

First, the assessor makes the assessment and then the county board of equalization reviews the assessments and equalizes them. The third step provided by the constitution is that the state board of equalization shall equalize the assessment of property between the different counties of the state, and also assess the property of all railroads, telegraph, telephone and transmission lines of the state. The state board of equalization is provided for by sec. 12, art. 7, of the state constitution, which board shall consist of the governor, secretary of state, attorney general, state auditor and state treasurer, whose duties shall be prescribed by law. The duties of the state board of equalization, as prescribed by law, are of two kinds, and as such were clearly considered by the framers of our constitution. The duties of the state board will be referred to hereafter in this opinion.

This board of equalization is composed of elective officers. Those elective boards have been provided for the purpose of equalizing taxes and each has particular duties to be performed which are prescribed by law. The state has been under this system since statehood.

The case of *State ex rel. Brown County v. Myers, Judge,* 52 Wis. 628, 9 N. W. 777, cited by counsel for plaintiffs, advances a startling doctrine, as we understand it, suggested in certain *dicta* in that case. Referring to the assessment and collection of taxes, the statement is as follows: "For, this whole matter is within the control of the legislature,

which, doubtless, might abolish the present system and create
a state board for the assessment and equalization of the value
of the taxable property of the state.'' Is it possible that in
Wisconsin the legislature is above the constitution and the
people, and may inaugurate a different system for the assess-
ment and equalization of the value of taxable property in
that state than that provided by the constitution? This court
is not willing to adopt the rule that the legislature is above
the constitution adopted by the people themselves. The peo-
ple in adopting the state constitution have provided a method
for its amendment and under that provision the legislature
is not authorized to amend it. (Secs. 1 and 3, art. 20.)
Under said section 1 it is made the duty of the legislature
to submit any amendment or amendments to the electors of
the state, and by said sec. 3, whenever two-thirds of the mem-
bers elected to each branch of the legislature shall deem it
necessary to call a convention to revise or amend the constitu-
tion, they may do so, as provided in said section.

The doctrine is advanced by some people that even the
constitution of the United States is old and antiquated and
that Congress ought not to pay much attention to it; and
also that the state constitutions may be disregarded by the
legislatures. We cannot concur in that doctrine. If the con-
stitution of the state of Idaho is not satisfactory to a majority
of the people, let them amend it in an orderly way and as
has been provided by the constitution itself. The amendment
of the Idaho constitution is not a difficult matter, but the
people themselves have provided in their constitution that
it can only be amended as therein provided.

The case of *State v. Daniels,* 143 Wis. 649, 128 N. W. 565,
is relied upon by the plaintiffs. It appears from that case
that in 1905 the Wisconsin legislature passed an act providing
that whenever it was made to appear to the state tax com-
missioners that the assessment of property in any assessment
district was not made in substantial compliance with the law
and that the interests of the public would be promoted by
a reassessment, such commissioners should have authority to
order a reassessment and name one or more persons who

should make the same, and also that the commissioners might appoint a board of review to review the assessment made by its appointees for that purpose. This law was passed under constitutional provisions somewhat similar to the constitutional provisions of Idaho providing for the election in the taxing districts of local assessors. It is stated in the opinion that it is conceded by both sides in that case that the law under consideration did not deprive nor purport to deprive the local communities of the right to elect their own assessors and boards of review, and that the appointees were selected merely to perform a specific act and that when that was performed their powers and functions ceased. Under those facts the following question was suggested by the court: "Does the act unlawfully deprive the local officers of the right to exercise their functions and the electors of the municipality of the right to choose their agents to do the particular work?" The opinion then proceeds more upon the ground of supposed public policy than of law, as we view it, to the effect that the legal officers are not interfered with and that their functions are not curtailed so long as they do not violate the law which they are bound to obey. We are unable to understand by what rule of logic it can be said that the Wisconsin act did not have the effect of depriving the assessors of duties imposed upon them by the constitution. The constitution of Wisconsin provided for an original assessment by a particular officer and a review thereof by a particular body, both elected by the persons directly affected by the action of such officer and board. We fail to understand how this act of the legislature which provided for reassessment and review of such assessment by officers appointed and not elected can have any other effect than to deprive the local officers of the right to perform those duties. It may be said that the officers still may perform those duties. But they are not permitted to perform them as contemplated by the provisions of the constitution. Assessors in that state are charged with the performance of certain duties and to act in a particular manner and have the right to the exercise of their judgment in assessing property. The court has the power to compel them to

act wherein they have failed to act, but the limit of the court's power would be to order that the assessor exercise his honest judgment in conformity with the law and not require him to place a value upon property different from what his good judgment and legal discretion required him to do. If that be true, how can a legislature confer upon an appointive board the right to say whether the honest judgment exercised by an equalizing board or officer has been legally exercised when the only fault to be found is that the honest judgment of the assessor or the equalizing board differed from the honest judgment of the appointive board?

In *Pittsburg etc. Co. v. Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. ed. 1031, the court states:

"Whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and if such determination comes into inquiry before the courts, it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined."

In *People ex rel. Green v. Board of Commrs.,* 176 Ill. 576, 52 N. E. 334, in passing upon the power of courts in *mandamus* proceedings to compel boards or officers to perform certain acts, the court held that if the act sought to be enforced by *mandamus* is judicial and discretionary in its character, the court will only compel the defendants to act, but never compel them to decide in a particular manner. Those are the limits of powers of courts in matters of this kind and the principle applies equally to a legislature when the office is a constitutional one.

Can the people of this state by their constitution reserve to themselves the right to select officers and boards who shall judge as to whether or not the assessments have been properly made? They certainly can, and in this case have done so. It is not within the power of the legislature to provide for appointive boards to usurp this particular function of the local board. We are not inclined to follow any decisions which hold that the legislature has power or authority to set aside the system or scheme for assessing, equalizing and tax-

ing property established by the constitution and enact one of its own.

Reliance is placed by the plaintiffs upon the case of *Ames v. People,* 26 Colo. 83, 56 Pac. 656. It appears from that case that in 1891 the General Assembly of Colorado passed an act for the better assessment and collection of revenue. By that act it was made the duty of the state board of equalization to assess all the property in the state owned, used or controlled by railroad, telephone, telegraph, and sleeping and other palace car companies. The constitution of Colorado had a provision somewhat similar to that of our own, providing for the election biennially in every county of the state of an assessor. The precise question raised and decided in that case was as to whether or not the county assessor was the only officer in the state who could assess property, and the court there held that the assessor did not have the exclusive right to assess a class of property the *situs* of which is not in a single county but in several counties.

The fundamental idea, it seems, of the framers of our own constitution and of all constitutions in providing systems for the assessment and collection of revenue, is to arrive at a uniform valuation of property throughout the state, and one of the fundamental ideas, in practically all of the states, for the accomplishment of this purpose is by providing for the local assessment of property. By local assessment, however, is not meant that property shall be assessed by county officers, but rather that property shall be assessed within the county in which the property is located, and a railroad company, having its lines in many counties of the state, or in all of the counties, would hardly ask that its property be assessed in different units by the assessor of each particular county, acting independently of each other. The *situs* of such property is not in any one county but in the state, in a number of counties, and to follow out the spirit of the constitutional provision is to provide some means whereby such property is assessed as a whole by officers having jurisdiction of the whole.

The case of *Ames v. People, supra,* is authority for the position taken by the defendants in this case. Those consid-

erations controlled the Colorado court in upholding the act above referred to, and are stated as follows:

"While it may be, and we may, for our present purposes, concede it to be true that except as limited by statutes, the office of assessor provided for in the constitution, without specifying the duties of the officer filling it, implies the usual and ordinary incidents thereof, the proper construction of the section is not that the legislature is prohibited by it from conferring upon some other tribunal the power to assess a class of property which the assessors cannot, in the very nature of things, so assess as to bring about its just valuation commanded by other constitutional provisions." Under the reasoning and authority of that case, we think it clear that the state board of equalization has power and authority under rules to be established by the legislature to assess railroad, telegraph and telephone lines and other property whose situs extends to more than one county. As we understand it, the rule established by the Colorado case is directly against the contention of plaintiffs here.

In the case of *People ex rel. Crawford v. Lothrop,* 3 Colo. 428, the question presented was the power of the state board of equalization to raise the aggregate value of the assessable property in the state as returned to them by different counties. In speaking of the assessor in this regard, the court said:

"The constitution provides (sec. 8, art. 14) for the election in each county, each alternate year, of a county assessor. He is thus a constitutional officer, and though his duties are left unprescribed, the essential duties of an assessor must be presumed to have been contemplated. Is there not here a plain intention on the part of the people to preserve local control over the valuation of property for purposes of taxation?"

In the same opinion, referring to the power claimed to be possessed by the state board of equalization, the court said: "This claim, if well founded, makes them practically a board of assessors, with power to fix and determine values as well

as adjust and equalize valuations." (See, also, *Taxing Mining Claims,* 9 Colo. 635, 21 Pac. 476.)

In *Davies v. Board of Supervisors,* 89 Mich. 295, 50 N. W. 862, the ground of the decision is well stated by the court at 863 of the N. W. citation. It appears in that case that the legislature had sought to deprive certain constitutional officers of some of the functions of their offices and to confer those functions upon a board appointed by a power removed from the *situs* of the property to be assessed and not responsible to local authority, and it was held that the legislature had no more power to deprive such officers of their authority and confer that authority upon officers not of local selection than it has to abolish the offices, and that it was just as essential to local self-government that the functions of elective officers be preserved to such officers as that the right of election be protected. (See, also, *People v. Highway Commrs.,* 15 Mich. 347.)

The cases of *Sawyer v. Dooley,* 21 Nev. 390, 32 Pac. 437, and *Nevada Tax Commission v. Campbell* (Nev.), 135 Pac. 609, do not seem to be in point in this case, for the reason that the Nevada constitution has no provisions in regard to revenue officers even remotely similar to those contained in the constitutions of the states where the questions raised in this proceeding have been determined.

In Kentucky the legislature provided for the election of a state board of equalization with power to equalize the different classes of property between the different counties. The constitution provided for local assessors and the local board of equalization but did not provide for a state board of equalization. The constitutionality of the act providing for the state board of equalization was raised in the case of *Spalding v. Hill,* 86 Ky. 662, 7 S. W. 27, and the act was upheld. The reasons for upholding said act are apparent. The state board was not given power to equalize except as to certain classes of property between counties. It had no authority over such assessments, and hence was not a reviewing board of the local assessing officer and boards of equalization.

In New York state the court had under consideration an act of the legislature which vested the appointment in the governor, with the consent of the Senate, of a commissioner of taxes and assessments in the city and county of New York, and the court held that under the provisions of that act the city was deprived of all local control of the assessment of the property of the people in that county for the purposes of taxation, and held: "It thus deprives the people of the state of a right secured to them by the constitution and is therefore void."

Some reliance has been placed on the case of *Missouri Riv. Power Co. v. Steele,* 32 Mont. 433, 80 Pac. 1093.   Section 3698 of the Political Code of Montana provided, in substance, that in all counties of Montana having an assessed value of eight millions of dollars or more the district judge should appoint three resident taxpayers to constitute a board of appraisers, whose duty it was to fix the value of real estate in the county for the purpose of assessment by the county assessor, which valuation so fixed by the board should constitute the true value of the real estate, and that the assessor in making up his assessment list should not assess any real estate at a greater or less valuation than that fixed by the board.   It was the contention of the plaintiffs in that case, who attacked the law, that under art. 16, sec. 15, of the constitution which provided for the election of an assessor in every county, no other person than the assessor was authorized to assess property, and that the legislature had no authority to provide for the assessment by any other body or person than the assessor. The court in that case in effect held, without, however, referring to any authority, that if the duties of assessor are not fixed by the constitution, any duties in regard to the assessment of property might be devolved upon appointive or other officers as the legislature saw fit.   Under that holding the law was held constitutional.   That decision was based on the premise. that the Montana constitution did not prescribe the duties of the assessor, and the court said: "Of course, in so far as the constitution has defined those duties, as in the instances mentioned—of the county clerk, treasurer, the board

of equalization—the legislature may not enact any law in conflict therewith."

The earlier cases decided by the Montana supreme court are neither expressly modified nor overruled in that decision.

In the case of *Life Ins. Co. v. Martien,* 27 Mont. 437, 71 Pac. 470, the court held that the word "assessor" and the word "collector" as used in the constitutional provision, construed in the power company case, conferred such powers upon those officers as are conferred upon officers of similar names. (See, also, *State v. Equalization Board,* 18 Mont. 437, 46 Pac. 266, which follows the rule of the Colorado case in *People v. Lothrop,* 3 Colo. 428.)

There is no doubt but that the legislature could provide an appeal from the action of the board of equalization, but this court held in *Feltham v. Board of Equalization,* 10 Ida. 182, 77 Pac. 332, that the legislature had not provided an appeal from an order of the board of equalization equalizing assessments. (See *Humbird Lumber Co. v. Morgan,* 10 Ida. 327, 77 Pac. 433, and *Fenton v. Board of Commissioners,* 20 Ida. 392, 119 Pac. 41.) If an appeal were authorized, it would not necessarily follow that the court could review and modify the acts of such officers when exercising discretion in passing upon the facts before them.

We conclude that the act in question was not intended to and does not confer the power on the tax commission contended for the plaintiffs. The tax commission has not the authority or power to equalize assessments and to compel the board of equalization to adopt such equalization. If we were to construe the intent of the legislature in passing said act to mean that said tax commission could set aside assessments made by the assessor where they were legally made, and could set aside the equalization made by the board of equalization, whether county or state, it would necessitate the holding of said act unconstitutional. The legislature did not intend to create an appointive board composed of three members who might review and set at naught all actions of the assessors and boards of equalization provided by the constitution. No such plenary power was intended.

The powers conferred upon said commission are referred to in sec. 8 of said act, which section provides, among other things, that the commission "shall supervise the administration of all laws relating to the assessment of property and the levy, collection, apportionment and distribution of taxes, and shall exercise power and authority to enforce all such laws." While the taxpayers have authority to institute proceedings to compel revenue officers to perform their duties under the law, this tax commission is constituted for the purpose of looking after those matters which the taxpayers neglect or are not for any reason able to do. The taxpayer is not paid for doing that kind of work but the tax commission is paid for doing it, and for making proper investigations and advising and consulting with the revenue officers, and if such officers illegally or fraudulently neglect to perform the duties imposed upon them by law, it is the duty of the tax commission to bring proper proceedings in the courts to compel such officers to comply with the law. The intention of the legislature in passing said act was not to supersede the rights of the revenue officers of this state in the exercise of their judgment and discretion in the performance of the duties imposed on them. The tax commission is given power to oversee assessors and boards of equalization and all officers upon whom any duties devolve under the revenue laws of the state, and "require all such boards and officers to perform the duties imposed on them by law," by proper proceedings in the courts. But the legislature evidently considered that a special board for that purpose would be more efficient in stimulating such officers in the performance of their duties than if it were left to the taxpayers and citizens of the county and state, who generally have private affairs sufficient to occupy their time. If such boards or officers act illegally or fraudulently, it is the duty of said tax commission to bring proper proceedings to set such illegal and fraudulent acts aside.

Plaintiffs have cited the *Great Northern Ry. Co. v. Snohomish County*, 54 Wash. 23, 102 Pac. 881, and other Washington cases for the purpose of showing the meaning of the

expression "general supervision." The distinction between the Washington commission act and the Idaho act will appear from the following language used in the Washington act giving the commissioners power: "To exercise general supervision over assessors and county boards of equalization, and to determine an assessment of the taxable property in the several counties, cities and towns of the state." The constitutionality of that act was not raised in those cases. The Idaho act, however, confers no general supervision on the commission but power to supervise the administration of laws. There is a difference in the wording of the powers granted by the Washington act and the Idaho act. It was clearly the manifest intention of the legislature of Idaho to limit the Idaho tax commission to a certain field. They were given power to consult and advise with and oversee revenue officers in the discharge of their duties, and power to enforce a compliance with the laws of this state upon the part of all revenue officers, but if the action required of revenue officers is judicial and discretionary in its nature, and the officer refuses or neglects to act, the commission can compel them to act, but cannot compel them to decide in any particular manner nor review their determination of any particular act where they have acted legally and without any fraud. In other words, where they have acted within their legal discretion fairly and honestly, the commission cannot compel them to change such action and make it conform to the judgment of the tax commission in such matter.

There is ample field for the legitimate exercise of all the powers intended to be given to said tax commission without infringing in any way upon the duties imposed by the constitution and law upon other officers that have to do with the revenue of the state. Such duties are so varied and important in connection with the revenue system that there is ample room and opportunity for it in the state without in any manner interfering with the legitimate duties of the taxing officers.

Assessors and boards of equalization and others having duties under the revenue laws of the state ought to carefully

consider the suggestions and opinions of the tax commission in regard to their duties, and ought to adopt them when those suggestions and opinions will result in a more equitable and more just equalization of the taxes, and where they will make such assessment and equalization more uniform upon the same class of subjects within the state and thus secure a more just valuation for taxation of all property, both real and personal, within the state.   It is a matter of history that said tax commission has already discovered considerable property that ought to have been assessed by the state board of equalization, and has already discovered some mistakes and inequalities in the equalization made by said board, and upon suggestion to the state board by the tax commission, the state board at once proceeded to adopt the view of the tax commission.   So assessors and county boards of equalization should give careful consideration to the opinions and suggestions of said tax commission and conform to them whenever such suggestions will make the tax more uniform upon the same class of property.

The issues involved in this case affect every board and every officer upon whom devolves any duties under our revenue laws.   It affects the judgment and discretion of the assessors when assessing property; county boards when equalizing property in their several counties; the state board of equalization when equalizing property between the counties and when assessing railroads and telegraph lines; and county commissioners when fixing the levy for the purposes of taxation, and the county collectors when collecting taxes.   The tax commission under provisions of said act has certain advisory and supervisory power over such officers and boards.

The legislature, however, in enacting that law did not intend to deprive any of the constitutional officers or boards of duties imposed upon them by the express or implied provisions of the constitution.   The said tax commission was established for the purpose of gathering information and advising with all officers connected with the revenue of the state, and it was not intended that the commission should usurp or perform the duties of the assessors or boards of equaliza-

tion of the state. It is clear that said act is not in conflict with the provisions of the constitution when construed according to the intent of the legislature. The tax commission is clearly an advisory board.

We therefore hold under the provisions of said tax commission act that the tax commission is not entitled to a peremptory writ of mandate requiring the board of equalization of Bannock county to enter or cause to be entered upon the assessment-roll of said county the valuation of said property of Franklin & Hays in the amount fixed in said order of said commission. The alternative writ is quashed and the peremptory writ of mandate denied. No costs are awarded in this proceeding.

Stewart, J., concurs.

AILSHIE, C. J., Concurring.—I concur in denying the writ. It seems to me from an examination of the whole act creating the tax commission and the simultaneous act embodying the revenue laws, that the legislature had no intention of conferring any such power on the commission as is claimed for it. The revenue law was passed and approved the same day as the tax commission act, and must be considered and construed as a simultaneous act under the same rule of construction as if a part of this act. When we so consider it, there can be no doubt but that the legislature intended that the assessor and the county board of equalization and state board of equalization should still retain the same powers and exercise the same functions that have heretofore been exercised by them. Indeed, the revenue act specifically so provides.

Again, if the act were open to the construction claimed for it, we would then be met by a well-established rule to the effect that where a statute is open to two constructions, one of which would render it unconstitutional and the other constitutional, the court should adopt the construction which will hold the act valid and give it force and effect. (*Northern Pacific Ry. Co. v. Gifford, ante,* p. 196, 136 Pac. 1131; *In re Gale,* 14 Ida. 761, 95 Pac. 679.)