(February 5, 1894.)

## MELLER v. BOARD OF COMMISSIONERS OF LOGAN COUNTY.

[35 Pac. 712.]

POWER OF COUNTY COMMISSIONERS—CANNOT CREATE A COUNTY OFFICE—CONSTITUTIONAL PROHIBITION.—The appointment of one to be and act as the legal adviser of the board of county commissioners for a period of two years, and a contract by the board with such appointee defining his duties and fixing his compensation, is the creation of a county office, and is prohibited by the constitution of this state.

SAME.—The boards of county commissioners have no authority to devolve upon an appointee of their own the duties and functions which the law has already affixed to another office.

ORDERS OF COMMISSIONERS REVIEWABLE.—All orders of the boards of county commissioners are reviewable by the courts.

SAME—COMMISSIONERS MUST SHOW NECESSITY BEFORE EMPLOYING COUNSEL.—Before a board of county commissioners can employ counsel as provided in the constitution and the statutes, the necessity therefor must be apparent, and their action in making such appointment is reviewable by the courts.

(Syllabus by the court.)

WRIT of error to District Court, Logan County.

H. S. Hampton and N. M. Ruick, for Plaintiff in Error.

When our state constitution was adopted it abolished the office of county attorney, and provided for a district attorney whose jurisdiction extends over several counties. At the same time the framers of the constitution, evidently foreseeing the necessity which would arise under the changed conditions, provided, in section 6 of article 18 of our constitution that "The county commissioners may employ counsel when necessary." It was undoubtedly apparent to the framers of the constitution, as it has since been proved by experience, throughout the state, that the district attorney could be of little effective service to half a dozen different boards of commissioners, sitting, at the same time in as many different counties; nor could the district attorney be on hand to attend examinations, or prosecute civil suits, or appeal from orders or actions of the several boards of commissioners. That the employment of counsel by the year is the establishment of an office is wholly untenable. Office differs widely from employment, and involves delegation of sovereign functions. (Mechem on Public Officers, secs. 1, 2; Idaho Rev. Stats., sec. 1759, subd. 13; *Scallay v. County of Butte* (Cal.), 7 Pac. 660.) Persons whose duties are created by contract and not by law are not officers. (Mechem on Public Officers, secs. 2, 3, 5, 8, 36, 463; *City of Ellsworth v. Rossiter,* 46 Kan. 237, 26 Pac. 675.)

G. L. Waters and P. M. Bruner, for Defendant in Error.

County commissioners have no power to create an office, or officer, when the authority is not especially granted and specified. (Idaho Const., art. 3, sec. 19; *State v. Brennan,* 49 Ohio St. 33, 29 N. E. 593.) The law has provided that the district attorney shall counsel and advise the boards of county commissioners and attend to all suits and legal matters to which the county is a party. (Idaho Laws 1891-92, p. 47; Idaho Const., art. 5, sec. 18.) Commissioners have power to employ counsel only in specific cases, when necessary. (Idaho Const., art. 18, sec. 6; Idaho Rev. Stats., sec. 1759, subd. 13; *Smith v. Mayor etc.,* 13 Cal. 531; *Marion Co. v. Taylor,* 55 Miss. 184; *Platt Co. v. Gerrard,* 12 Neb. 244; *Waters v. Trovillo,* 47 Kan. 197, 27 Pac. 822.) Powers of boards of county commissioners are strictly statutory. (15 Am. & Eng. Ency.

of Law, 1039.) Contract is *ultra vires,* and therefore void. (15 Am. & Eng. Ency. of Law, 1100.) Where a written contract between a county and an individual shows upon its face that it was made by the county for the professional services of the individual as an attorney and counselor at law, which services are such as the law requires to be performed by the county attorney, such contract is *prima facie* void. (*Clough v. Hart,* 8 Kan. 487; *Doster v. Howe,* 28 Kan. 357; *Thatcher & Stephens v. Commissioners of Jefferson Co.,* 13 Kan. 189, 190.)

HUSTON, C. J.—This case is before us on a writ of error to the district court for the county of Logan. The facts as they appear by the record are as follows: That on the third day of January, 1893, the board of county commissioners for Logan county made, and caused to be entered upon their records, the following order: "Ordered that H. S. Hampton be, and he is hereby, appointed and retained as legal adviser of the board of commissioners for Logan county." On the thirteenth day of January, 1893, the board of commissioners for Logan county made the following contract with said H. S. Hampton:

"Ordered, that the following contract, made by the board with H. S. Hampton, for legal services, on the thirteenth day of January, 1893, be spread upon the minutes:

" 'This agreement, made the thirteenth day of January, in the year of our Lord 1893, between H. S. Hampton, of Bellevue, Logan county, state of Idaho, party of the first part, and Logan county, the party of the second part, witnesseth: That the said party of the first part, in consideration of the covenants, promises and agreements on the part of the said party of the second part, hereinafter contained, hereby covenants with the said party of the second part that the said party of the first part will act as attorney and legal adviser for said party of the second part for the term of two years, ending on the first day of January, 1895, and will prosecute or defend all actions or suits to which the said party of the second part may or shall be a party, in any of the courts of this state. And the said party of the second part, in consideration of the said covenants on the part of said party of the first part hereinbefore contained, agrees to and with the said party of the first part that the said

party of the second part will pay said party of the first part, for his said services within Logan county, and in the courts of said county, the sum of $2,000 per annum, payable quarterly, $500 to be paid at the regular meeting of the board of county commissioners held in April, 1893, and $500 every three months thereafter, and in addition thereto to pay said party of the first part a reasonable fee for any legal services required of him to be performed outside of said Logan county, and his actual and necessary expenses while away from the county seat, attending to business of said party of the second part. And, for the true and faithful performance of all and every of said covenants, the said parties to these presents bind themselves each unto the other in the penal sum of —— dollars, of the United States of America, as fixed, settled and liquidated damages, to be paid by the failing party to the other, his heirs or assigns.

" 'In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

" 'H. S. HAMPTON.          [Seal]

" 'J. C. CUNNINGHAM.    [Seal]

" 'JAMES OTTERSON.      [Seal]

" 'JOSHUA W. WINTERS.  [Seal]

" 'Board of County Commissioners of Logan County, State of Idaho.

" 'Signed, sealed, and delivered in the presence of ——.'

"The foregoing contract is hereby recognized, ratified and confirmed, as unanimous action of the board of county commissioners of Logan county, Idaho, at their regular session in January, 1893. . . . . The board here adjourned to October 21, 1893, at 9:30 A. M.

"Approved:                          J. C. CUNNINGHAM,
                                              "Chairman.

"W. B. GEORGE,
      "Clerk.

"State of Idaho,  }
County of Logan.  }  ss.

"I, W. B. George, clerk of the board of county commissioners of Logan county, state of Idaho, hereby certify the above and foregoing to be a true and correct copy of the record of said board of commissioners, as shown on pages 429, 430, 431, 432, 433, and 434, of the commissioners' minute-book, concerning the said order. Witness my hand and the seal of said office, this ninth day of November, 1893.

                                        "W. B. GEORGE,
                                                "Clerk.

"Filed, Nov. 9, 1893."

On the twentieth day of October, 1893, the said board of county commissioners, being in regular session, ordered the said contract of January 15, 1893, to be spread upon the minutes of the proceedings of said board, and made the following order in relation thereto: "The foregoing contract is hereby recognized, ratified and confirmed, as the unanimous action of the board of county commissioners of Logan county, Idaho, at their regular session in January, 1893." From this order of the board of October 20th, defendant in error appealed, under the provisions of section 1776 of the Revised Statutes, to the district court for said Logan county.

The district court, after finding the facts as hereinbefore set forth, finds, as conclusions of law: "1. That the action of the board of county commissioners of Logan county, in entering into the said contract with said Hampton, was unauthorized, illegal and void; 2. That the said contract was and is unauthorized, illegal and void, and that the county of Logan was not, and is not, bound thereby or thereunder; 3. That the action of said board of county commissioners, in ordering said contract to be spread upon their minutes, and in recognizing, ratifying and confirming the same, was and is, and each of said acts were and are, unauthorized, illegal and void"—and ordered judgment to be entered in accordance with said findings. Respondent brings the action of the district court here for review on writ of error.

The only question presented by this record is, Had the board of county commissioners of Logan county authority to make

the contract set out in the record?    Plaintiff in error contends that such authority is given in express terms, both by the constitution and by the statute.    Section 6 of article 18 of the constitution of Idaho, after designating the various county officers, for the election of whom the legislature shall provide, contains this further provision: "No other county offices shall be established."    Said section also contains the following provision: "The county commissioners may employ counsel when necessary."    Subdivision 13 of section 1759 of the Revised Statutes of Idaho of 1887, defining the duties of county commissioners, gives them power "to direct and control the prosecution and defense of all suits to which the county is a party in interest, and employ counsel to conduct the same, with or without the district attorney, as they may direct." Under the laws of the territory, as they existed at the time of the adoption of the state constitution, and the admission of Idaho as a state, district attorneys were provided for each of the several counties of the state.    The constitution changed this system, and provided (section 18, article 5) for the election of a district attorney for each judicial district of the state, who should "perform such duties as may be prescribed by law," and fixed the salary of such district attorney at $2,500 per year, and the term of office at four years.    At the first session of the legislature after Idaho became a state, an act was passed, amendatory of the law as it then existed, defining the duties of district attorneys.    Sections 2 and 3 of said act provide as follows:

"Sec. 2. That section 2051 be amended to read as follows: Where there is no district attorney for the district, or where he is absent from the court, or where he has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged, and for which he is to be indicted or tried, or when he is near of kin to the party to be indicted or tried on a criminal charge, or when he is unable to attend to his duties, the district court may, by an order entered in its minutes, stating the cause therefor, appoint some suitable person to perform for the time being, or for the trial of such accused person, the duties of such district attorney; and the person so appointed has all the

powers of the district attorney while so acting, and may receive such compensation as the court may allow, out of the salary of the district attorney, for all services by him performed.

"Sec. 3. That section 2052 be amended to read as follows: It is the duty of the district attorney: 1. To prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his district in which the people of the state, or any of the counties of his district, are interested or a party; and when the place of trial is changed in any such action or proceeding to another county he must prosecute or defend the same in such other county. 2. To give advice to the board of county commissioners and other public officers of his district, when requested in writing, in all public matters in which the people or the state or counties of his district are interested, or relating to the discharge of the official duties of such boards or officers. 3. To attend when requested by any grand jury, for the purpose of examining witnesses before them; to give them advice in any legal matter before them; to draw bills of indictment, information and accusation; to issue subpoenas and other process, requiring the attendance of witnesses. 4. On the first Monday in each month to settle with the auditors of the various counties of his district, and to pay over all money collected or received by him during the preceding month belonging to the counties of his district or state to the county treasurer of the proper county, and take his receipt therefor, and to file on the first Monday of January in each year in the office of the auditor of the proper county an account, verified by his affidavit, of all money received by him during the preceding year, by virtue of his office, for fines, forfeitures, penalties and costs, specifying the name of each person from whom he received the same, the amount received from each and the cause for which the same was paid. 5. To perform all other duties required of him by any law."

That it was the intent and purpose of the makers of the constitution, in changing the county attorney system to one of district attorneys, and by fixing the compensation of the district attorney in the constitution, to limit and curtail the expense of said office, is quite apparent, and we find this conclu-

sion supported by reference to the address of the committee of the convention, which accompanied the promulgation of the constitution, wherein it is set forth, as one of the advantages to be gained by the people from the adoption of the constitution, was the greatly reduced expense of county government. And it is shown in said address that, in the matter of compensation of district attorneys alone, the saving to the people under the system provided for by the state constitution would be some $21,700 per annum. This happy conclusion would hardly be reached, if the practice of the board of county commissioners for Logan county is to obtain throughout the state; for that board has not only created an office unknown to, and prohibited by, the constitution, but they have attached to it a compensation only limited by the modesty of the incumbent and the liberality of the board. Under the contract set forth, the party of the first part thereto is to do and perform only such acts and services as are already provided for by law, to be performed by the district attorney and attorney general. "The legislature cannot take from a constitutional officer a portion of the characteristic duties belonging to the office, and devolve them upon an office of its own creation." (Cooley's Constitutional Limitations, 331, note 2, and cases there cited.) And if this cannot be done by the legislature, will it be seriously contended that it can be done by a board of county commissioners?

Counsel for defendant in error contends that "the framers of the constitution, evidently foreseeing the necessity which would arise under the changed conditions, provided in section 6, article 16, that "the county commissioners may employ counsel when necessary." If this was the view the framers of the constitution took of the question, they certainly very studiously avoided giving it expression, either in the constitution, or in the accompanying "Address to the People" in behalf of its adoption. We are unwilling to believe that it was the purpose of the framers of our constitution to "pluck the muzzle of restraint" from the boards of county commissioners throughout the state, and leave them with the sole limit of the vagaries of their own sweet wills in imposing burdens upon the taxpayers of the state.

In the contract under consideration, the board of commissioners have not only provided for the performance by their employee of the duties of the district attorney, but they have gone further, and invested him with the functions, and imposed upon him the duties, which the law assigns to the attorney general. Are boards of county commissioners within the law, and amenable to its provisions, or are they, as would almost seem to be assumed by some of them, at least, "a law unto themselves"? The system of district attorneys, as contradistinguished from county attorneys, had existed from the organization of the territory to 1883, and, while the authority of the board of county commissioners to employ counsel, whenever a necessity therefor arose, was never questioned, it was never assumed or claimed that such board had the power to employ an attorney generally, and pay him such compensation as they saw fit. That the position to which Mr. Hampton was appointed, by the order of the board of January 3, 1893, was an "office," we think is established by an overwhelming weight of authority. (Bacon's Abridgment, 280; *Shelby v. Alcorn*, 36 Miss. 273, 72 Am. Dec. 169, and note; *Vaughn v. English*, 8 Cal. 39; *State v. Stanley*, 66 N. C. 59, 8 Am. Rep. 488; *Commonwealth v. Evans*, 74 Pa. St. 124.) The subsequent contract of January 13, 1893, enumerating the duties and fixing the compensation to be paid to the appointee, in no way changed the nature or character of the position. All the duties mentioned in the contract, to be performed by the said appointee, are included in the duties of other officers provided for by law, to wit, the attorney general and district attorney. The contention of counsel for plaintiff in error, that the exercise of discretion by the board of county commissioners is not reviewable by the courts, is not only unmaintainable; it is directly opposed to the plain provisions of the statute. (Rev. Stats., sec. 1776.) The recognition of such a rule would leave the people of the state entirely in the hands of the boards of county commissioners. While we recognize the right of the board of county commissioners, as expressed in the constitution, "to employ counsel when necessary," we do not assent to the construction of that provision claimed by the plaintiff in error —that it gives to the boards unbridled license to establish a

new office, and to devolve upon an officer unknown to the constitution and the statutes the functions and duties which the law has already affixed to another officer or office. The board of county commissioners may, when the necessity exists, employ counsel, but that necessity must be apparent, and the action of the board in each case is subject to review by the courts. To hold otherwise would, as we have already stated, be to leave the taxpayers of the state at the mercy of the boards cf county commissioners, without remedy. The judgment of the district court is affirmed, with costs.

Morgan and Sullivan, JJ., concur.