DEXTER HORTON TRUST & SAVINGS BANK v. CLEARWATER COUNTY, IDAHO, et al.

(Circuit Court of Appeals, Ninth Circuit. February 18, 1918.)

No. 2968.

1. COUNTIES ☜113(6)—CONTRACTS FOR CRUISING ASSESSABLE TIMBER LAND—POWERS OF COUNTY BOARD.

Const. Idaho, art. 18, § 6, provides for the election biennally of a county assessor, who shall be ex officio tax collector. Rev. Codes Idaho, § 2119, as amended by Laws Idaho 1913, c. 127, authorizes the board of county commissioners, on application by the assessor and after a hearing on 30 days' notice, to empower the assessor to appoint such deputies and clerks as the business of his office may require and to fix their compensation. Laws Idaho 1913, c. 58, declares that it shall be the duty of the assessor to assess all real property in his county, and in making assessments to actually determine as near as practicable the full cash value of each parcel assessed, and further provides for the classification of lands as agricultural, timber, or mineral lands, etc., and requires the taxpayer to make a statement as to the nature and value of his lands. *Held,*

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the county board is not authorized to contract with a third person to cruise the taxable timber lands of the county at a large expense.

2. COUNTIES ⟨Key⟩152—LIMITATION OF INDEBTEDNESS—"ORDINARY AND NECESSARY EXPENSE."

A contract for cruising taxable timber lands of a county at an expense considerably exceeding its yearly revenue is invalid; such expense not being an "ordinary and necessary expense," within Const. Idaho, art. 8, § 3, prohibiting counties from incurring indebtedness or liability in any year exceeding the income and revenue 'for such year, unless certain designated conditions are complied with relative to the authorization of the debt and provision made for its payment, but providing that the restriction shall not apply to the ordinary and necessary expenses authorized by general laws of the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary Expenses; Ordinary Expenses.]

Appeal from the District Court of the United States for the Central Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Dexter Horton Trust & Savings Bank against the County of Clearwater, of the State of Idaho, and Oren D. Crockett, as Treasurer thereof. From a decree dismissing the bill (235 Fed. 743), complainant appeals. Affirmed.

During 1914, the county of Clearwater, in Idaho, issued to M. G. Nease, of Oregon, as payment under a contract, warrants aggregating more than $44,000. In July, 1915, the Dexter Horton Trust & Savings Bank, appellant herein, acting in good faith, bought the warrants for value from Nease. In January, 1916, newly elected county officials of Clearwater county refused to recognize the warrants as valid obligations of the county, and the bank brought this suit to restrain the county and the treasurer of the county from dissipating to other purposes the funds of the county, which, it contends, were by law applicable to the payment of the warrants it held.

On April 15, 1914, a contract was made by the county of Clearwater, through the county commissioners, with Nease, whereby Nease agreed to make and complete by June 15, 1915, a careful, complete, and thorough cruise and estimate of all of the timber of the patented lands in Clearwater county, Idaho, with certain exceptions not here necessary to be stated. Nease was to be paid 12½ cents per acre for his cruise. The contract required reports from Nease showing topographic sketches and features, elevations, description of lands, varieties of timber, and much other detailed information. Nease was to give a bond for the faithful performance of his contract. The commissioners were to examine and accept or reject all reports filed by Nease at each regular session of the board, and to give to Nease or his assigns written acceptance or rejection of the reports, and were to issue warrants on the current expense fund for an amount equal to 80 per cent. of the amount due Nease as shown by the accepted reports; the balance to be held until 60 days after the completion of the contract and acceptance of the work. Clauses providing for arbitration in case of disagreement as to the cruises were inserted, and Nease agreed that he would not subcontract any part of the work. As the work progressed, Nease filed reports, which were accepted, and claims were allowed for 80 per cent. as provided for, and after the completion of the work the board allowed the balance of 20 per cent. called for under the contract. Nease sold warrants amounting to more than $18,000 to a purchaser, and these warrants were paid by the county. Two days before the officials who had made the contract with Nease retired from office, and before the appellant bought the warrants, the warrants were presented to the county treasurer, but were stamped by the treasurer "Not paid for want of funds," and thereafter were registered. When the appellant bank bought the warrants, it had no notice of any claim of the county against their validity, and did not learn of the objections of the defendant county to them until September or October, 1915, or shortly before this suit was brought.

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendants, appellees, denied that the county commissioners had authority to issue the warrants referred to, and deny their validity, and pleaded that the warrants were issued to Nease under the contract, when no provision had been made in the tax levy of the year 1914 for the payment of the indebtedness incurred, and therefore that such indebtedness was not a necessary or ordinary expense, and was void under section 3 of article 8 of the Constitution of Idaho. Defendants also asserted that the cruise contracted for was not made by the assessor or his deputy as required by law, that the contract was fraudulently entered into, that the work was improperly done, and that the treasurer was not obligated by law to pay the warrants. On the trial the bank admitted that no provision had been made to meet the debt incurred under the Nease contract in the tax levy of the year 1914, and that the debt was not authorized by the vote of the electors of the county. After trial before the court, decree was made dismissing the plaintiff's bill. The bank appeals.

Peters & Powell, of Seattle, Wash., George W. Tannahill, of Lewiston, Idaho, and H. B. Beckett, of Portland, Or., for appellant.

Fred E. Butler, of Lewiston, Idaho, and John R. Becker, of Orofino, Idaho, for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). [1] The statutes of Idaho (section 2119 of the Revised Codes of Idaho, as amended by chapter 127 of the Laws of 1913) provide in substance:

That the assessor of a county shall be empowered by the board of county commissioners to appoint such clerical assistance as the business of his office may require, deputies to be remunerated as may be fixed by the county commissioners: "Provided, that any of the officers mentioned in this section requiring the services of one or more deputies or requiring clerical assistance shall, for a period of at least thirty days before any regular meeting of the board of county commissioners," publish a notice in a newspaper, or if there is no newspaper in the county, then by putting a notice in his office for thirty days before such regular meeting, "of his intention to apply to the board of county commissioners for a deputy or deputies or for clerical assistance, and no deputy shall be appointed or clerical assistance allowed by said board until due proof of the publication of said notice shall have been furnished said board and the necessity for said assistance is satisfactorily shown. * * *"

The Constitution of Idaho (section 6, art. 18) provides that the Legislature, by general and uniform laws, shall provide for the election biennially in each county of a county assessor, who shall be ex officio tax collector. Certain sections of the laws (article 3, chapter 58, Laws of 1913) make it the duty of the assessor to assess all real property in his county, and in making such assessments he shall—

"actually determine, as near as practicable, the full cash value of each tract * * * of real property assessed, and shall enter the value thereof, and the value of all improvements thereon * * * in appropriate columns against the description of such real property in the real property assessment roll." Section 39.

By chapter 58 of the Laws of Idaho of 1913 (section 48), for the purpose of assessment, lands must be classified as agricultural, or timber, or cut-over and burnt timber land, mineral land, and by other classifications not material at this time. The assessor (section 49) shall exercise his best judgment in classifying land, but the classifica-

tion made may be amended or revised, and a new classification made, or the classification of any particular tract changed by the board of county commissioners, if in the judgment of such board the classification has not been correctly made under the provisions of the law. There are further statutory guides for the assistance and instructions of assessors; for instance, by section 15, the assessor in valuing property shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, but shall value each piece of property by itself and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. The assessor is required to obtain correct statements from owners, and it is his duty to determine the value of such property, and return and enter the same on the assessment roll.

The statutes above referred to are but part of the scheme for gathering the lists of property subject to taxation and providing for the valuation thereof for taxation purposes. It is urged that the acquisition of the information which the assessor must have in order to make a classification and valuation is merely to qualify the assessor to perform properly the official function, and that the valuation only is the official act. The weakness of this argument is apparent, we think, when we consider the scope of the duties of the assessor as defined by the statutes. They make it obligatory upon such official to classify, and then to determine, as near as practicable, the full cash value of the property subject to assessment in his county. This obligation to make classification cannot be lost sight of, and carries with it the inseparable duty to acquire enough information to be able to arrange the property lists intelligently and as prescribed by law. He can always refer to the taxpayer's statement made under section 16 of the statutory provisions. Primarily, no one except the assessor is responsible for the classification; and when classification is had, all of course for purposes of assessment, the assessor alone is responsible for determining, as near as practicable, what the full cash value of the property may be. Thus in assessing of property there are two steps—one the listing, the other the estimating or valuing—and while one is the complement of the other, both are essential in making an assessment. Cooley on Taxation, p, 596. In Bloomquist v. Board of County Commissioners, 25 Idaho, 284, 137 Pac. 174, the Supreme Court of Idaho said that property must be assessed; "that is, the property must be listed for taxation." Furthermore, the court held that, under the Constitution of Idaho, the duty of assessment was upon the assessor, and that, the Constitution having provided a scheme for the "mechanical administration of the laws of the state," the Legislature could not substitute another method therefor. It might well be that, in order to enable the assessor to reach the full cash value of timber lands, it would be of great aid to him to be furnished with a cruise by experts of the timber upon timber lands; it might also well be that it would be of great assistance to him to have expert mining engineers furnish reports concerning the ore bodies in the mines situate in his county, or that he would be given great assistance by having expert reports upon the value of agricultural lands.

But the law assumes that the assessor is competent to arrive at reasonably fair valuations, and that, if need be, he will inform himself sufficiently well to make values; hence it does not expressly authorize the expenditure of public funds for the employment of experts to gather such information for the aid of the official, and we are cited to no statute which fairly implies authority for incurring expenses of such a character. The limitations upon the employment of assistants are very positive. If the regular force of his office is inadequate, the assessor may have some assistance, but only as limited by section 2119; that is, he may employ such deputies or clerks as the board of county commissioners may empower him to employ, and even then, before the board can act, it must appear that the official has given notice of intention to apply for assistants, and it must be satisfactorily shown to the board that there is need for such assistance. State v. Goldthait, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737. The case of Pacific Timber Co. v. Clarke County (D. C.) 233 Fed. 540, called for an interpretation of the powers of county commissioners under the laws of Washington, which, in respect to assessments and equalization, are at least in some respects different from those of Idaho. Section 3890, R. & B. Code; Gen. Custer Mining Co. v. Van Camp, 2 Idaho (Hasb.) 40, 3 Pac. 22. What the powers of the board of equalization might be to make the Nease contract we need not stop to analyze, for plainly the agreement was made by the board of commissioners with a view to furnishing information for the assessor in making his assessment, and should be judged accordingly.

[2] Appellants urge that neither the contract nor the performance thereof by Nease was in violation of section 3 of article 8 of the Constitution of Idaho, which is as follows:

"Sec. 3. No county * * * shall incur any indebtedness, or liability in any manner or for any purpose, exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. * * * Any indebtedness or liability incurred contrary to this provision shall be void: Provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

It is important to keep in mind the concession that the indebtedness now questioned was incurred without the assent of the electors at an election held to submit the question, and also that no provision was made for the collection of an annual tax sufficient to pay the interest on the indebtedness, and to constitute a sinking fund for the payment of the principal, and also that such indebtedness exceeded the income and revenue for the year in which it was incurred. The inquiry is therefore at once narrowed to this: Was the purpose for which the indebtedness was incurred one of the "ordinary and necessary expenses authorized by the general laws of the state"? We are greatly assisted in reaching decision upon the true meaning of the constitutional section and the proviso by the views of the Supreme Court of the state, expressed in Bannock County v. Bunting & Co., 4 Idaho, 156, 37 Pac. 277, where it was held that a comparatively

small expense paid for a temporary jail was an ordinary and necessary one authorized by the Constitution, and in Ada County v. Bullen Bridge Co., 5 Idaho, 79, 47 Pac. 818, 36 L. R. A. 367, 95 Am. St. Rep. 180, where it was held:

"That an improvement involving an expenditure of nearly $40,000, where the revenue of the county for the year was only about $70,000, would not readily be classed as an 'ordinary and necessary expense.'"

The court said:

"It would be difficult, we apprehend, to name an expense under such a construction that would not be 'ordinary and necessary.' If a necessity existed for the bridge, there was no conceivable excuse for not complying with the plainly expressed provisions of the Constitution and the statutes. If these provisions of law are to be ignored or defeated upon flimsy technicalities, it is difficult to see what protection the people will have."

The expenditure involved in the contract with Nease amounted to approximately $63,000; whereas, the available revenue was approximately little more than $53,000, out of which would have to come the usual ordinary and necessary expenses for 1914, which amounted to about $59,000.

In Dunbar v. Board of County Commissioners, 5 Idaho, 415, 49 Pac. 409, the court, after pointing out that the terms "ordinary and necessary" are used conjunctively in the constitutional provision, said that expenditures made in excess of the revenues of any current year must not only be for ordinary expenses, "such as are usual to the maintenance of the county government, the conduct of its necessary business, and the protection of its property, but there must exist a necessity for making the expenditure at or during such year," and concluded that the building of a bridge and the payment of scalping bounties were not ordinary, but extraordinary, expenses, and, being such, could not be created in excess of the revenue for the fiscal year in which such expenses were incurred without the assent of the necessary two-thirds of the electors of the county voting at an election duly called and held. The court also held that it was intended by the makers of the Constitution that the several counties of the state should be placed upon a cash basis, and that the incurring of heavy debts by the counties should not be had, except where the people of the counties should so authorize.

In Hickey v. City of Nampa, 22 Idaho, 41, 124 Pac. 280, the Supreme Court, in discussing the meaning of the proviso under consideration, held that the Legislature could say that an expenditure, though out of the ordinary, which is incurred for the purpose of repairing some damage done to property, or improving it so as to render it serviceable to a city, falls within the proviso. The expenditure in that case was made necessary by a casualty, where a large amount of property was destroyed by reason of a fire, which destroyed the water supply, and the municipal authorities proceeded under section 2270 of the Revised Codes of Idaho, calling for and requiring the restoration and improvement of the water system and fire-extinguishing apparatus. The point emphasized was that the making of repairs, although it

might only occur at infrequent intervals, would still be an "ordinary and necessary expense."

These decisions are in accordance with what we believe is the true construction of the constitutional provision, and they lead to the conclusion that the commissioners had no right to enter into the contract, although it may be assumed they honestly believed it would be advantageous to the county, until they had complied with the legal requirements.

Wingate v. Clatsop County, 71 Or. 94, 142 Pac. 561, upholds the position of appellant. The case involved the construction of article 11 of section 10 of the Constitution of Oregon, as amended by the Laws of 1911 (see Laws 1911, p. 11), providing that:·

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except * * * to build permanent roads within the county, but debts for permanent roads shall be incurred only on approval of a majority of those voting on the question."

The court drew a distinction between a voluntary indebtedness, or one which a county is at liberty to evade or postpone until means are provided for the payment of the expenses incident thereto, and an involuntary indebtedness, or liability imposed upon a county by law and which it is not privileged to evade or postpone, and held that, in order to carry out the constitutional mandate and fairly to distribute the burdens of government, the expenditures there examined into—a debt on a contract for cruising timber—necessarily became of such a character as to create an involuntary indebtedness, "stationed without the pale of constitutional inhibition." With great respect for the learned court which pronounced the opinion, we are not persuaded that under the laws of Idaho there was a duty, the performance of which involved the power to contract the debt in question, without a vote of the electors.

It being clear to us that the expense under investigation was not an ordinary and necessary one, the result must be that appellant cannot prevail, and that the District Court was right in dismissing the complaint.

Affirmed.