572 P.2d 501

J. L. "Mike" CLARK, Assessor of Ada County, Idaho, Clarence A. Planting, Clerk of the District Court and Ex-Officio Auditor, Ada County, Idaho, Ada County Property Owners Association, an Idaho Corporation, Don Chance, and Dora Chance, husband and wife, Ada County Taxpayers, Elmo Orr and Ellen Orr, Ada County Taxpayers, Petitioners,

v.

The ADA COUNTY BOARD OF COMMIS-SIONERS, the Ada County Board of Equalization, Linda Lund Davis, Individually, Vern Emery, Individually, Gary Bermeosolo, Individually, and as members thereof, the Idaho State Tax Commission, Ewing Little, Individually, Don Loveland, Individually, Jenkin Palmer, Individually, and Larry Looney, Individually, and as members thereof, Respondents,

and

Joint School District No. 2, Ada and Canyon Counties, Idaho, City of Meridian, a Municipal Corporation, Garden City, a Municipal Corporation, City of Eagle, a Municipal Corporation, City of Boise, a Municipal Corporation, Ada County Highway District, a body politic of the State of Idaho, Additional Respondents.

No. 12740.

Supreme Court of Idaho.

Dec. 6, 1977.

750

R. M. Robson of Robson and Croner, Boise, for petitioners.

David Leroy, Pros. Atty., and Jim C. Harris, Chief Civ. Deputy Pros. Atty., Ada County, for respondents Ada County Bd. of Com'rs and its members.

Wayne L. Kidwell, Atty. Gen., and Theodore V. Spangler, Deputy Atty. Gen., for respondents State Tax Com'n and its members.

John O. Fitzgerald of Ambrose, Fitzgerald and Crookston, Meridian, for School Dist. No. 2, Ada and Canyon Counties, and the City of Meridian.

Allen Boyd Ellis of Ellis & Brown, Boise, for Garden City.

Hugh Mossman, Acting City Atty., Boise, for Boise City.

Alfred C. Hagan and David R. Lombardi of Langroise, Sullivan & Smylie, Boise, for Ada County Highway Dist.

McFADDEN, Chief Justice.

This is an original proceeding instituted on August 26, 1977, by petitioners, the Ada County Assessor, the Ada County Clerk of the District Court and Ex-Officio Auditor, the Ada County Property Owners Association, and four taxpayers. Petitioners seek a peremptory writ of prohibition against respondents, the Ada County Board of Commissioners, the Ada County Board of Equalization, the Idaho State Tax Commission, and their members. Petitioners seek to prevent the Ada County Board of Equalization from further acting on the existing 1977 Ada County Real Property Assessment Roll, and the Board of County Commissioners from interfering with the Assessor's supervision of his office personnel and from transferring funds budgeted to the Assessor's office. Additionally petitioners seek to prohibit the Idaho State Tax Commission from acting on or certifying to the Ada County Clerk of the District Court and Ex-Officio Auditor the existing 1977 Ada County Real Property Assessment Roll and from issuing orders or directives to the Ada County Assessor that interfere with the direct management of his office.

Subsequent to the date this petition was filed, the named respondents filed their motion to dismiss the proceedings and the cause was set for argument on September 21, 1977. In the meantime, various Ada County Taxing districts and municipalities moved to intervene and to dismiss the petition. At argument the parties agreed that the intervenors should be treated as additional respondents.

In an order issued on May 7, 1976, by the State Tax Commission, the Ada County Assessor and the Ada County Board of Equalization were directed to conduct a revaluation of all property in Ada County by June 1, 1977, with these values to be shown on the 1977 assessment rolls and used for 1977 tax assessments. The order also provided:

"The county shall retain the services of a qualified professional independent appraiser for the purpose of conducting the valuation program either as an independent contractor or in conjunction with the Ada County assessor's office."

On June 14, 1976, Max P. Arnold and Associates, Inc. entered into a written "CONTRACT FOR APPRAISAL SERVICES" with Ada County, the agreement being approved and executed by the Assessor, J. L. "Mike" Clark, and each of the then members of the Board of County Commissioners.

On May 24, 1977, while the reappraisal program was nearing completion, the State Tax Commission issued a supplemental order. Reciting in its findings that there appeared to be a need to reform procedures in the offices of the Ada County Assessor, Auditor and Treasurer to insure that all tax data would be properly and uniformly processed for the valuation of the property, assessment, equalization, levy and collection of taxes for 1977 and future years, the Commission then directed Ada County, its Board of Commissioners and Board of Equalization to

1. Review, by the Board of Equalization, all values established by the re-appraisal program, including, but not limited to those protested by taxpayers;

2. Extend by 90 days the time to determine all protests, and to submit to the State Tax Commission an estimated abstract of the rolls on or before July 25, 1977.

3. Establish and maintain a parcel numbering system with the data processing equipment and procedures to be used in the county offices; to map, and inventory all new property and to verify all taxing district boundaries.

4. Establish, under the Board of County Commissioners, an independent and permanent data processing audit system to review and audit all procedures and results of valuation, assessment, equalization, levy, collection and payment of taxes.

5. Supervise, through the Board of County Commissioners, the activities of the county and county officers relating to the assessment, levy and collection of the taxes at all stages.

6. Submit within 45 to 60 days a written report showing the steps taken to implement the provisions of the order and progress made.

After the issuance of this Supplemental Order, the present Board of County Commissioners issued a "policy statement" on June 30, 1977. This statement provided that Max P. Arnold and Associates, Inc., would be retained to review and process appeals of the 1977 Notice of Valuations and to review the 1977 roll as agents of the Board of Equalization for the purpose of any recommendation on final actions on the roll, and that the reappraisal function for purposes of the 1978 roll would be returned to the office of the Assessor. The policy statement also included a staffing plan for a reappraisal office and a staffing plan and tentative program for a "permanent audit division," which was to audit independently the "procedures and results" of the taxing system. The policy statement also provided for transferring funds from the Assessor's office in order to accomplish the continuing reappraisal, but made no provisions for requiring the consent or supervision of the Assessor.

By the end of June, 1977, the reappraisal project was completed and the tax roll for 1977 prepared by Arnold & Associates. The Assessor "transmitted" the roll to the Board of County Commissioners on June 24, 1977, stating he was unable to verify the rolls (required by I.C. §§ 63–318 and 63–319) because he had no knowledge of its accuracy. The Board of Equalization accepted the roll without verification and delivered it to the Auditor for preparation of abstracts. On July 25, 1977, the Auditor submitted the abstract of the assessment roll to the State Tax Commission. This abstract was certified by the Auditor and examined and approved by the Assessor on the date of its transmittal. The State Tax Commission approved the abstract as modified on August 22, 1977 (the fourth Monday of August), and it was certified on August 26, 1977, the day this proceeding was instituted.

Petitioners specifically seek to prohibit the Board of County Commissioners of Ada County from the following acts:

"a. From acting further as an Ada County Board of Equalization on the existing 1977 Ada County Real Property Assessment Roll.

b. From interfering in any unlawful manner with the Ada County Assessor's supervision of personnel employed by his office.

c. From transferring funds lawfully budgeted or dedicated to the use of the Ada County Assessor's office."

They also seek to prohibit the Idaho State Tax Commission from the following acts:

"a. From acting on or certifying to the Ada County Clerk of the District Court and the Ex-Officio Auditor the existing 1977 Ada County Real Property Assessment Roll.

b. From issuing orders or directives to the Ada County Assessor which intereferes [sic] with the direct management of his office."

■ Article 5, Section 9 of the Idaho Constitution grants this court original jurisdiction to issue writs of prohibition. The function of a writ of prohibition and the circumstances in which it is appropriate are generally set out in Title 7, Chapter 4 of the Idaho Code. As therein defined, a writ of prohibition is an extraordinary writ issued to arrest the proceedings of a tribunal, corporation, board or person acting without or in excess of its jurisdiction. I.C. § 7–401. By this writ a court intervenes in judicial or quasi-judicial proceedings to prevent acts or proceedings without or in excess of authority. The remedy is therefore preventive in nature. *In re Miller,* 4 Idaho 711, 43 P. 870 (1896). However, even in cases where jurisdiction may be lacking or exceeded, a writ of prohibition will issue only if no plain, speedy and adequate remedy at law is available. I.C. § 7–402. See *Pfirman v. Probate Court,* 57 Idaho 304, 64 P.2d 849 (1937); *Murphy v. McCarty,* 69 Idaho 193, 204 P.2d 1014 (1949).

■ In defining the writ of prohibition, the Idaho Code merely codifies the characteristics of the common law writ. *Stein v. Morrison,* 9 Idaho 426, 75 P. 246 (1904). Under Idaho common law, the writ of prohibition is a discretionary remedy, granted only when the court is satisfied that the remedy is appropriate. *Rust v. Stewart,* 7 Idaho 558, 64 P. 222 (1901). As we held in that case, this extraordinary writ will not be granted when its appropriateness or effectiveness is doubtful. Thus an applicant bears the burden of showing that a respondent is acting without or in excess of its jurisdiction *and* that the writ will effectively prevent the respondent from so acting. The court will not, however, issue a writ as an idle gesture, i. e., where no act in excess of jurisdiction can be prevented.

■ It follows that a past act will not be subject to a writ. As this court stated in *Bellevue Water Co. v. Stockslager,* 4 Idaho 636, 43 P. 568 (1895):

"The writ of prohibition will not issue where the act to be restrained has already been performed, even where the act has been performed during the pendency of the application for the writ, for the reason that the writ would be without any effect whatever." 4 Idaho at 641, 43 P. at 569.

See also: *La Salle Extension Univ. v. District Court,* 52 Idaho 559, 16 P.2d 1064 (1932), and *Nelson v. Marshall,* 94 Idaho 726, 497 P.2d 47 (1972), citing *Bellevue Water, supra,* with approval.

*A. Restraints sought against the Idaho State Tax Commission*

■ We turn to petitioners' request that this court prohibit the Idaho State Tax Commission from "acting on or certifying to the Ada County Clerk of the District Court and Ex-Officio Auditor the existing 1977 Ada County Real Property Assessment Roll." It is documented that on the day this action was filed, i. e. August 26, 1977, the State Tax Commission acting as the State Board of Equalization had already reviewed and approved the abstract of the real and personal property roll of Ada County. The abstract of the property roll was formally certified on August 26, 1977. It is further undisputed that at the time of certification no member of the Commission had knowledge of the filing of the instant

action and that since the assessment roll had already been certified and returned to the County, there were no further acts required by the Commission. In other words, by the time the instant action had been filed, all actions in the certification procedure had been completed by the State Tax Commission and nothing remained to be accomplished concerning the 1977 tax roll for which the writ of prohibition could have issued. Under such facts the writ cannot issue.

Next, petitioners request that the State Tax Commission be prohibited from issuing orders or directives to the Assessor that interfere with the direct management of his office. Again, the actions petitioners would have this court enjoin have been completed. Furthermore, petitioners fail to point out where there is any threat of such action being taken in the future. We therefore conclude that the writ of prohibition should not issue to the Commission.

## B. Restraints sought against the Ada County Board of Commissioners and Ada County Board of Equalization

■ Petitioners seek to prohibit further action by the County Board of Equalization on the 1977 tax roll, which is now complete. The crux of petitioners' argument is that because the independent appraisal carried out by the County Commissioners and Max Arnold was not within the County Commissioners' jurisdiction, all subsequent acts by the County Board of Equalization are in excess of its jurisdiction and, therefore, should be prohibited. This argument is untenable.

The court first notes that the reappraisal was completed at least two months before this action was filed. Because a past act cannot be prohibited, *Bellevue Water Co. v. Stockslager, supra,* it need not be decided, and we expressly decline to decide, whether the Commissioners exceeded their jurisdiction in their dealings with Arnold & Associates.

■ Any subsequent acts concerning the roll that petitioners ask the court to prohibit are required by statute and therefore fall within the jurisdiction of the County Board of Equalization. Idaho Code §§ 63–401 *et seq.* not only empower, but require, county commissioners to meet as a board of equalization to hear and determine protests and claims for tax exemptions. Title 63, Chapters 9 and 10 of the Idaho Code require the determination of mill levies, computation of the tax due on each parcel and mailing of tax notices to taxpayers. Thus the only remaining actions to be taken on the 1977 roll that might have been prohibited when this suit was filed were authorized by statute. As petitioners themselves have pointed out, a writ of prohibition is issued to intervene in and to prevent further actions in excess of jurisdiction. The writ is not a vehicle for forcing review of past extrajurisdictional actions by prohibiting present actions plainly within a respondent's jurisdiction. The court therefore declines to prohibit respondents from further using the 1977 Ada County tax roll.

Petitioners next seek to prohibit the County Boards from interfering in any unlawful manner with the Assessor's supervision of personnel employed by his office and from transferring funds budgeted to his office. From the petition it appears that this is founded on the claim that the Board of County Commissioners set up an independent office to audit and review real property appraisal and assessment and have transferred personnel and funds levied for assessment purposes from the Assessor's office without his consent or supervision. Immediately the question arises as to whether the Assessor had an alternative adequate and speedy remedy for these allegedly unlawful activities.[1]

■ Idaho Code § 7–402 embodies the common law rule that a writ of prohibition will issue only if no plain, speedy and adequate remedy at law is available. *Cronan*

---

1. The traditional common law remedy for an alleged usurpation of office is an action in the nature of quo warranto. I.C. §§ 6–602–6–609.

Petitioners do not base their claim for relief on these provisions.

*v. District Court*, 15 Idaho 184, 96 P. 768 (1908); *Little v. Broxon*, 31 Idaho 303, 170 P. 918 (1918); *Evans v. Court*, 47 Idaho 267, 275 P. 99 (1929); *State ex rel. Bank of Eagle v. Leonardson*, 51 Idaho 646, 9 P.2d 1028 (1932). In *Olden v. Paxton*, 27 Idaho 597 at 601, 150 P. 40 (1915), this court cited with approval a Florida case holding:

> "It is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists, and it is always a sufficient reason for withholding the writ that the party aggrieved has another and complete remedy at law. (High on Ex. Rem., sec. 770, and authorities cited.) And the writ will not be allowed to take the place of an appeal. In all cases, therefore, where the party has ample remedy by appeal from the order or judgment of the inferior court, prohibition will not lie, no such pressing necessity appearing in such cases as to warrant the interposition of this extraordinary remedy, and the writ not being one of absolute right, but resting largely in the sound discretion of the court." *Sherlock v. Mayor and City of Jacksonville*, 17 Fla. 93 (1879).

In other cases, see *Cronan v. District Court*, *supra*, this court has emphasized that an appeal is normally an adequate remedy at law but that under some circumstances it may not be adequate and a writ of prohibition may therefore issue. E. g., *Spivey v. District Court*, 37 Idaho 774, 219 P. 203 (1923). But the burden is on the petitioner to show that his appeal remedy is inadequate. *Smith v. Young*, 71 Idaho 31, 225 P.2d 466 (1950).

▮ The court finds no evidence in the record to show that petitioners made any attempt to appeal those actions of the County Commissioners of which they complain.[2] Nor have they shown that appeals would be inadequate to redress their grievances. They have therefore failed in their burden of showing that no plain, speedy and adequate remedy at law is available. Idaho Code § 7–402 and a long line of Idaho cases prevent this court from granting the writ absent such a showing.

The application for the writ is denied. Order to issue.

BISTLINE, J., and COGSWELL, District Judge, concur.

LODGE, District Judge, specially concurring, in which SCOGGIN, District Judge (Ret.), concurs.

I concur with the reasoning and conclusion of the majority opinion as to the denial of the application for the writ of prohibition. However, I believe that the statewide impact of this case forces a discussion of the constitutional and statutory relationship of the State Tax Commission with not only the Ada County Assessor and Board of Commissioners, but also with all county assessors.

A most important element in this case is framed by petitioners' argument that the assessment duties of the County Assessor may not be taken from him because he is a constitutional officer elected by the people. Petitioners assert that the two orders of the Tax Commission did just that. They also contend that the constitutional authority of the Assessor was further eroded by the County's contract with an outside appraisal firm authorizing that firm to conduct the reappraisal giving rise to this litigation,[1] and by the "policy statement" issued by the Board of County Commissioners. In support of these contentions, petitioners rely

---

2. The record is inadequate regarding the County's alleged ongoing interference with the Assessor's Office by way of diversion of funds and personnel. The record notes only that a "policy statement" was issued announcing such an intention. We do not know whether the "policy statement" was ever carried out. We do not know whether it was ever published or posted as an official "act, order, or proceeding of the Board" from which an appeal may be taken under I.C. § 31–1509. Nor do we know if any such appeal has ever been taken.

1. As to the petitioner-Assessor this position seems untenable in light of his actual participation in the execution of the contract between the County and the outside appraisal firm, Max P. Arnold and Associates.

on *Blomquist v. Board of County Commissioners,* 25 Idaho 284, 137 P. 174 (1913).

Respondents counter by asserting that at the time *Blomquist* was decided the State Tax Commission was a legislatively created and authorized body. Today, that Commission is a constitutionally established and authorized body as a result of a 1944 amendment to Article 7, Section 12 of the Idaho Constitution. Thus, respondents argue, the reasoning of *Blomquist* is no longer apposite.

I disagree with respondents' position. An examination of *Blomquist,* the Constitution, and existing statutes supports the validity of petitioners' claim.

In *Blomquist,* the State Tax Commission filed an original action in this court for issuance of a writ of mandate to compel the Bannock County Board of Equalization to substitute a valuation set by the Commission for a valuation set by the Bannock County Assessor. This court refused the writ after reviewing the relationship between the constitutional functions and duties of the elected county assessor and the statutory powers of the Tax Commission.

While the 1944 constitutional amendment referred to above has obviously affected the *Blomquist* discussion of the statutory authority of the Tax Commission, that amendment has in no way diminished the importance of the court's holding in *Blomquist* that "Under sec. 6, article 18, of the Constitution, it is essential that the assessment of property located wholly within a county shall be made by the assessor elected by the voters of the county . . . ." (25 Idaho at 292, 137 P. at 176.) That holding not only remains unchanged, it has been re-enforced by the fact that since *Blomquist* and even subsequent to 1944, the people of Idaho have amended Article 18, Section 6 of the Constitution several times, and each time have retained the elective position of county assessor.

Nor can I find that either individual statutes or the overall scheme of Title 63 of the Idaho Code have altered the holding in *Blomquist.* To the contrary, both indicate an intention on the part of the legislature to implement the constitution by specifically setting forth the power of the assessor to appraise and reappraise property for purposes of taxation.

Acting pursuant to Article 18, Section 11, of the Idaho Constitution, the legislature has set forth in Idaho Code, Section 63–201, the duty of the county assessor to assess all property wholly situated within his county. And, throughout Title 63, other duties are prescribed, including the obligation to revalue on a continuing basis all property within the county: "It shall be the duty of the county assessor of each county in the state to conduct and carry out a continuing program of valuation of all properties under his jurisdiction . . . ." I.C. § 63–221.

The fact that this statute provides that the assessor shall perform his duties "pursuant to such rules and regulations as the state tax commission may prescribe," and that the Commission is to provide the assessor with supervision and technical assistance does not detract from the fact that the duty to "conduct and carry out" the program is that of the assessor. There is not the slightest hint in § 63–221 that the legislature intended the State Tax Commission to have the power to remove this duty from the assessor and grant it to a third person.

Further evidence that the legislature has never intended to grant such authority to the Tax Commission is found in Idaho Code, Section 63–202A, the very statute which permits the Commission to order compliance with provisions of the Idaho Code and with its own rules and regulations. That statute provides that the Commission may order a county to conduct a reappraisal of all property within the county, and further provides that if the public officer affected by the order of the Commission does not comply within ten days of the service of the order, the Commission "may apply to a judge of the district court of the county in which the public officer holds office for an order . . . to compel such public officer or employee to comply" with the order, or to show cause why the public officer or employee should not be so compelled.

If the Commission elects not to pursue the judicial determination provided in Section 63–202A, it may proceed under an alternative approach provided by the legislature in Section 63–513(19). That statute provides that the Commission shall have the power and duty:

"To examine and test the work of county assessors at any time and to have and possess all rights and powers of such assessors for the examination of persons and property, and for the discovery of property subject to taxation; and *if it shall ascertain that any taxable property is omitted from the assessment rolls or is not assessed or valued according to law, it shall bring the same to the attention of the assessor of the proper county in writing, and if such assessor shall neglect or refuse to comply with the request of the tax commission to place such property on the assessment rolls, or correct such incorrect assessment or valuation, the tax commission shall have the power to prepare a supplemental roll, which supplement shall include all property required by the tax commission to be placed on the assessment roll and all corrections to be made. Such supplement shall be filed with the assessor's assessment roll, and shall thereafter constitute an integral part thereof to the exclusion of all portions of the original assessment rolls inconsistent therewith, and shall be submitted therewith to the county board of equalization.*" (Emphasis added.)

Neither the power to prepare a supplemental assessment roll (Section 63–513(19)) nor the authority to seek a court order compelling compliance with an order to reappraise property (Section 63–202A), authorizes or permits the Commission to direct that some party other than the assessor perform the appraisal duties.

Moreover, the legislative history of Section 63–221 shows that the grant of such power to the Commission is not intended. The original text of that statute, as enacted in 1955, obligated the county assessor to undertake and complete a county-wide revaluation within six years of the passage of the act. The statute authorized the Tax Commission to provide supervision and technical assistance, and to "*commence, continue, and complete* such revaluations in counties where such revaluations have not been commenced by 1961." (Emphasis supplied.) S.L.1955, Ch. 101, Sec. 1. Disregarding for the moment the lack of legislative authority to remove from a constitutional officer even a portion of the characteristic duties belonging to that office (see *Wright v. Callahan*, 61 Idaho 167, 99 P.2d 961 (1940) and *Blomquist, supra*) it is clear that under the original enactment of Section 63–221 the Commission was permitted to perform a revaluation in a county where the law had been ignored. In 1969, however, that section was replaced by the present statute, S.L.1969, Ch. 455, Sec. 10, which does *not* contain an authorization for the Commission to "commence, continue and complete" revaluations not carried out by the counties. Instead, it directs the Commission "to promulgate rules and regulations for the implementation of this program, and to provide any such county assessor with such supervision and technical assistance as may be necessary." Moreover, this new statute directs the board of county commissioners to "furnish the assessor with such additional funds and personnel as may be required to carry out" the revaluation program. I believe that these statutory changes clearly show that the legislature did not intend that the Commission have the power to conduct county-wide reappraisals or to order them conducted by a third party, but rather intended that the Commission, and the county commissioners, provide necessary assistance to the county assessor for his conduct of such reappraisal. These changes argue compellingly against the existence of any authority in the Commission to order a county to employ a third party to carry out a reappraisal.

I find nothing in Title 63, or in the legislative history of Section 63–221 that casts doubt on the continued viability of this court's holding in *Blomquist* as to the constitutional authority of the county assessor elected by the people to conduct assessment functions as to all property situated wholly with the county.

Another important point of contention in this case is presented by petitioners' argument that *Blomquist* forbids the Board of County Commissioners to interfere with the Assessor's functions by establishing the independent data processing audit office and by transferring to that office funds which are budgeted to the Assessor. Respondents argue the propriety of the Board's actions on the basis of I.C. § 31–802, which provides county commissioners with the power to "supervise the official conduct of all county officers . . . charged with assessing, collecting, safekeeping, management or disbursement of the public moneys and revenues" and to "see that they faithfully perform their duties . . . ."

Again, I cannot agree with respondents' position. I agree that Section 31–802 may permit the Board to set up an audit division as part of its own administrative staff, but only with funds budgeted to the commissioners for their staff. Creation of a new county office, and diversion to it of funds budgeted to the assessor would appear to violate Article 18, Section 6 of the Constitution, which prohibits the establishment of any county offices other than those named in the Constitution, and this court's decision in *Meller v. Board of Commissioners*, 4 Idaho 44, 35 P. 712 (1894), which held that the commissioners lack the authority to establish a new office unknown to the Constitution and endow it with functions already affixed by law to another office.

. On the issue of whether or not the Board of County Commissioners may enter into a contract with a third party for performance of assessment duties, the cases of *Dexter Horton Trust & Sav. Bank v. Clearwater County*, 235 F. 743 (D.Idaho 1916), aff'd 248 F. 401 (9th Cir. 1918), and *Meller v. Board of Commissioners, supra*, suggest there is no present authority for such a proposition.